**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TAMMY FOX | : | |
| 3308 CEDAR AVENUE | : | |
| MOOSIC, PENNSYLVANIA | : | |
| | : | |
| JAMIE TOMPKINS | : | |
| SCI MUNCY | : | |
| PO BOX 180 | : | |
| MUNCY, PA 17756 | : | |
| | : | |
| ALLISON DEMY | : | CIVIL ACTION |
| 300 WILLIAMS STREET | : | |
| SCRANTON, PA 18508 | : | JURY TRIAL |
| | : | DEMANDED |
| JOANNE PERRI | : | |
| 188 ELLEN ROAD | : | |
| JESSUP, PA 18434 | : | 3:16-CV-1511 |
| PLAINTIFFS | : | |
| | : | JUDGE CAPUTO |
| V. | : | |
| | : | |
| LACKAWANNA COUNTY | : | |
| 200 N. ADAMS AVENUE | : | |
| SCRANTON, PA 18503 | : | |
| | : | |
| COMMISSIONER PATRICK O'MALLEY | : | |
| 200 N. ADAMS AVENUE | : | |
| SCRANTON, PA 18503 | : | |
| | : | |
| COMMISSIONER JIM WANSACZ | : | |
| 200 N. ADAMS AVENUE | : | |
| SCRANTON, PA 18503 | : | |
| | : | |
| COMMISSIONER COREY O'BRIEN | : | |
| 200 N. ADAMS AVENUE | : | |
| SCRANTON, PA 18503 | : | |
| | : | |
| COMMISSIONER MICHAEL WASHO | : | |
| 200 N. ADAMS AVENUE | : | |
| SCRANTON, PA 18503 | : | |
| | : | |
| COMMISSIONER A.J. MUNCHAK | : | |
| 200 N. ADAMS AVENUE | : | |
| SCRANTON, PA 18503 | : | |

```
                                        :
COMMISSIONER ROBERT CORDARO             :
200 N. ADAMS AVENUE                     :
SCRANTON, PA 18503                      :
                                        :
LACKAWANNA COUNTY DISTRICT              :
ATTORNEY'S OFFICE                       :
415 SPRUCE STREET                       :
SCRANTON, PA 18503                      :
                                        :
JOHN/JANE DOE DISTRICT ATTORNEY STAFF I-X :                    :
415 SPRUCE STREET                       :
SCRANTON, PA 18503                      :
                                        :
WARDEN ROBERT MCMILLAN                  :
LACKAWANNA COUNTY PRISON                :
1371 N. WASHINGTON AVENUE               :
SCRANTON, PA 18509                      :
                                        :
WARDEN VINCENT MOONEY                   :
LACKAWANNA COUNTY PRISON                :
1371 N. WASHINGTON AVENUE               :
SCRANTON, PA 18509                      :
                                        :
WARDEN JANINE DONATEE                   :
LACKAWANNA COUNTY PRISON                :
1371 N. WASHINGTON AVENUE               :
SCRANTON, PA 18509                      :
                                        :
WARDEN TIM BETTI                        :
LACKAWANNA COUNTY PRISON                :
1371 N. WASHINGTON AVENUE               :
SCRANTON, PA 18509                      :
                                        :
THOMAS STAFF                            :
LACKAWANNA COUNTY PRISON                :
1371 N. WASHINGTON AVENUE               :
SCRANTON, PA 18509                      :
                                        :
BRIAN JEFFERS                           :
LACKAWANNA COUNTY PRISON                :
1371 N. WASHINGTON AVENUE               :
SCRANTON, PA 18509                      :
                                        :
JOSEPH BLACK                            :
LACKAWANNA COUNTY PRISON                :
```

1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
HEATHER WOLFF                                          :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
CHRISTINE NEVEROSKI                                    :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
CASEY CALPIN                                           :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
PAULA BONDY                                            :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
MARY BETH COAR                                         :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
SERGEANT KATE FANNING                                  :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
JEAN PELUCACCI                                         :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
WILLIAM SHANDLEY                                       :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :
SCRANTON, PA 18509                                     :
                                                       :
CAPTAIN CHERELLI                        :
LACKAWANNA COUNTY PRISON                               :
1371 N. WASHINGTON AVENUE                              :

SCRANTON, PA 18509                                                    :
                                                                     :
GEORGE MCHALE                                                        :
LACKAWANNA COUNTY PRISON                                             :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
RHONDA FIEDERER                                                      :
LACKAWANNA COUNTY PRISON                                             :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
CAPTAIN ROBERT MAGUIRE                                               :
LACKAWANNA COUNTY PRISON                                             :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
JAMES WALSH                                                          :
LACKAWANNA COUNTY PRISON                                             :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
ARTHUR MCPHILLIPS                                                    :
LACKAWANNA COUNTY PRISON                                             :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
LEO BAUM                                                             :
LACKAWANNA COUNTY PRISON                                             :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
CATHERINE NOVACK                                                          :
LACKAWANNA COUNTY PRISON                                             :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
JOHN SCHNIPES                                                        :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
MARK JOHNSON                                                         :
1371 N. WASHINGTON AVENUE                                            :
SCRANTON, PA 18509                                                    :
                                                                     :
TAMMY MILLER                                                         :

1371 N. WASHINGTON AVENUE                            :
SCRANTON, PA 18509                                   :
                                                     :
CORRECTIONS OFFICER JOSEPH ROBERT                    :
SLOBODNEK                                            :
1371 N. WASHINGTON AVENUE                            :
SCRANTON, PA 18509                                   :
                                                     :
LIEUTENANT NANCY CARROLL                             :
LACKAWANNA COUNTY PRISON                             :
1371 N. WASHINGTON AVENUE                            :
SCRANTON, PA 18509                                   :
                                                     :
DEPUTY WARDEN DAVID LANGAN                           :
LACKAWANNA COUNTY PRISON                             :
1371 N. WASHINGTON AVENUE                            :
SCRANTON, PA 18509                                   :
                                                     :
CORRECTIONS OFFICER CHARLES BEATRICE                 :
LACKAWANNA COUNTY PRISON                             :
1371 N. WASHINGTON AVENUE                            :
SCRANTON, PA 18509                                   :
                                                     :
JOHN/JANE DOE CORRECTIONS OFFICERS I-X               :
LACKAWANNA COUNTY PRISON                             :
1371 N. WASHINGTON AVENUE                            :
SCRANTON, PA 18509                                   :
                              DEFENDANTS             :

## AMENDED COMPLAINT

AND NOW, come Plaintiffs, by and through their Counsel, Walker Comerford Law, who file this Amended Complaint as a matter of course under Fed. R. Civ. P. 15(a)(1)(B), averring as follows:

### JURISDICTION

1. This is a civil action seeking damages against Defendants for acts constituting the deprivation of Plaintiffs' rights secured under the United States Constitution, 1st, 4th, 8th, and 14th Amendments, under Federal Laws 42 U.S.C. §§ 1983, 1985, 1986, and 1988, providing for cause of action, and under Pennsylvania State Law.

2. While Plaintiffs were subjected to pre-trial and post-trial detention in the Lackawanna County Prison, in the Lackawanna County House Arrest Program, in the Lackawanna County Work Release Program, and under the

supervision of Lackawanna County Probation and Parole and/or the State Department of Probation and Parole, Defendants, acting individually and/or in concert, willfully, callously, recklessly, with gross negligence, and with deliberate indifference, acted and/or failed to act, under the Color of State Law, in a manner which proximately caused the violation of Plaintiffs' rights to Due Process, to bodily integrity, to be housed in a humane facility, to be free from rape and sexual harassment, to privacy, to freedom of speech, and to be free from cruel and unusual punishment, protected under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and the 1st, 4th, 8th and 14th Amendments to the United States Constitution.

3. Original Federal Jurisdiction and Supplemental Jurisdiction over State Law claims is established under 28 U.S.C. §§ 1331, 1343, and 1367, under 42 U.S.C.  §§ 1983, 1985, 1986, and 1988.

4. Venue is proper in the United States District Court for the Middle District of Pennsylvania under 28 U.S.C. § 1391 because the factual basis for all claims stated herein occurred in the Middle District and because Plaintiffs and Defendants reside in and/or maintain their principle places of business in the Middle District.

## PARTIES

5. Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

6. Plaintiff, Tammy Fox ("Fox"), is an adult, competent individual who currently resides at 3308 Cedar Avenue in Moosic, Pennsylvania.

7. Plaintiff, Jamie Tompkins ("Tompkins"), is an adult, competent individual who currently resides at SCI Muncy, PO Box 180, Muncy, PA 17756.

8. Plaintiff, Allison Demy ("Demy"), is an adult, competent individual who currently resides at 300 Williams Street in Scranton, Pennsylvania.

9. Plaintiff, Joanne Perri ("Perri"), is an adult, competent individual who currently resides at 188 Ellen Road in Jessup, Pennsylvania.

10. Defendant, Lackawanna County ("Defendant County"), is a municipality organized by and through the Commonwealth of Pennsylvania that regulates and implements customs, policies, and practices, and that directs, manages, and controls the customs, policies, practices, and employees of Lackawanna County Prison, Lackawanna County House Arrest, Lackawanna County Work Release, and Lackawanna County Adult Probation.  At all relevant times, Defendant County was acting under the Color of State Law.

11. Individual Defendant, Commissioner Patrick O'Malley ("Defendant O'Malley"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and who regulated and implemented customs, polices and practices of Defendant County, Lackawanna County Prison, Lackawanna County House Arrest, Lackawanna County Work Release, and Lackawanna County Adult Probation at all relevant times herein. At all relevant times, Defendant O'Malley acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant O'Malley is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

12. Individual Defendant, Commissioner Jim Wansacz ("Defendant Wansacz"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and who regulated and implemented customs, polices and practices of Defendant County, Lackawanna County Prison, Lackawanna County Work Release, Lackawanna County House Arrest, and Lackawanna County Adult Probation at all relevant times herein.  At all relevant times, Defendant Wansacz acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant Wansacz is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

13. Individual Defendant, Commissioner Corey O'Brien ("Defendant O'Brien"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and who regulated and implemented customs, polices and practices of Defendant County, Lackawanna County Prison, Lackawanna County House Arrest, Lackawanna County Work Release, and Lackawanna County Adult Probation at all relevant times herein.  At all relevant times, Defendant O'Brien acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant O'Brien is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

14. Individual Defendant, Commissioner Michael Washo ("Defendant Washo"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and who regulated and implemented customs, polices and practices of Defendant County, Lackawanna County Prison, Lackawanna County Work Release, Lackawanna County House Arrest, Lackawanna County Work Release, and Lackawanna County Adult Probation at all relevant times herein.  At all relevant times, Defendant Washo acted under the Color of State Law and pursuant to the custom, policy, and/or

practice of Defendant County.  Defendant Washo is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

15. Individual Defendant, Commissioner A.J. Munchak ("Defendant Munchak"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and who regulated and implemented customs, polices and practices of Defendant County, Lackawanna County Prison, Lackawanna County House Arrest, Lackawanna County Work Release, and Lackawanna County Adult Probation at all relevant times herein.  At all relevant times, Defendant Munchak acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant Munchak is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

16. Individual Defendant, Commissioner Robert Cordaro ("Defendant Cordaro"), is and/or was a Lackawanna County Commissioner, who is and/or was employed by Defendant County, is and/or was under the command and authority of Defendant County, and who regulated and implemented customs, polices and practices of Defendant County, Lackawanna County Prison, Lackawanna County House Arrest, Lackawanna County Work Release, and Lackawanna County Adult Probation at all relevant times herein.  At all relevant times, Defendant Cordaro acted under the Color of State Law and pursuant to the custom, policy, and/or practice of Defendant County. Defendant Cordaro is being sued in his individual, supervisory, and all other official capacities as a Commissioner.

17. Defendant, Lackawanna County District Attorney's Office ("Defendant District Attorney"), is a municipal law enforcement entity by and through the Commonwealth of Pennsylvania that regulates and implements customs, policies, and practices, and that directs, manages, and controls the customs, policies, practices, and employees of Lackawanna County District Attorneys, Lackawanna County Detectives, and other Lackawanna County Law Enforcement Agencies.  At all relevant times, Defendant District Attorney was acting under the Color of State Law.

18. Individual Defendants, John/Jane Doe District Attorney Staff I-X ("John Doe District Attorney Defendants"), are and/or were Attorneys, Detectives, Administrative Staff, or other employees at Lackawanna County District Attorney's Office, employed by Defendant County and Defendant District Attorney, and under the command and authority of Defendant County and Defendant District Attorney.  At all times relevant herein, John Doe District Attorney Defendants acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Defendant District Attorney.  John Doe District Attorney Defendants are being sued in their

individual, supervisory, and all other official capacities as Corrections Officers.

19. Individual Defendant, Warden Robert McMillan ("Defendant McMillan"), is and/or was a Corrections Officer ("c/o") and the Warden of Lackawanna County Prison. At all times relevant herein, Defendant McMillan was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant McMillan is being sued in his individual, supervisory, and all other official capacities as Warden and Corrections Officer.

20. Individual Defendant, Interim Warden Vincent Mooney ("Defendant Mooney"), is and/or was a Corrections Officer and the Warden of Lackawanna County Prison. At all times relevant herein, Defendant Mooney was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Mooney is being sued in his individual, supervisory, and all other official capacities as Warden and Corrections Officer.

21. Individual Defendant, Warden Janine Donate ("Defendant Donate"), is and/or was a Corrections Officer and the Warden of Lackawanna County Prison. At all times relevant herein, Defendant Donate was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Donate is being sued in her individual, supervisory, and all other official capacities as Warden and Corrections Officer.

22. Individual Defendant, Warden Tim Betti ("Defendant Betti"), the current warden of Lackawanna County Prison, hired in June 2016, and who also held prior administrative positions at the prison, including, but not limited, to, Assistant Warden. At all times relevant herein, Defendant Betti was employed by and under the command and authority of Defendant County and was acting under Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Betti is being sued in his individual, supervisory, and all other official capacities as Warden and Corrections Officer.

23. Individual Defendant, Lieutenant Nancy Carroll ("Defendant Carroll"), is and/or was a Corrections Officer and a Lieutenant at the Lackawanna County Prison. At all times relevant herein, Defendant Carroll was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Carroll is being sued in her individual,

supervisory, and all other official capacities as Corrections Officer and Lieutenant.

24. Individual Defendant, Deputy Warden David Langan ("Defendant Langan"), is and/or was a Deputy Warden at the Lackawanna County Prison. At all times relevant herein, Defendant Langan was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Langan is being sued in his individual, supervisory, and all other official capacities as Deputy Warden.

25. Individual Defendant Charles Beatrice ("Defendant Beatrice"), is and or was a Corrections Officer at the Lackawanna County Prison. At all times relevant herein, Defendant Beatrice was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Beatrice is being sued in his individual, supervisory, and all other official capacities as Corrections Officer.

26. Individual Defendant, Thomas Staff ("Defendant Staff"), is and/or was a supervisor, manager and/or policymaker for the Lackawanna County House Arrest and Work Release Programs. At all times relevant herein, Defendant Staff was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Staff is being sued in his individual, supervisory, and all other official capacities as employee of Lackawanna County.

27. Individual Defendant, Brian Jeffers ("Defendant Jeffers"), is and/or was the Director of Lackawanna County Community Corrections Program, which included the Lackawanna County House Arrest and Work Release Programs. At all times relevant herein, Defendant Jeffers was employed by and under the command and authority of Defendant County and was acting under the Color of State Law and pursuant to the custom, policy, or practice of Defendant County. Defendant Jeffers is being sued in his individual, supervisory, and all other official capacities as Director.

28. Individual Defendant, Corrections Officer Joseph Black ("Defendant Black"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County. At all times relevant herein, Defendant Black acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison. Defendant Black is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

29. Individual Defendant, Corrections Officer Heather Wolff ("Defendant Wolff"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Wolff acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Wolff is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

30. Individual Defendant, Corrections Officer William Shandley ("Defendant Shandley"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Shandley acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Shandley is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

31. Individual Defendant, Corrections Officer Cherelli ("Defendant Cherelli"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Cherelli acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Cherelli is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

32. Individual Defendant, Corrections Officer George McHale ("Defendant McHale"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant McHale acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant McHale is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

33. Individual Defendant, Corrections Officer Catherine Novack ("Defendant Novack"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Novack acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Novack is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

34. Individual Defendant, Corrections Officer Christine Neveroski ("Defendant Neveroski"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Neveroski acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Neveroski is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

35. Individual Defendant, Corrections Officer Casey Calpin ("Defendant Calpin"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Calpin acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Calpin is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

36. Individual Defendant, Corrections Officer Paula Bondy ("Defendant Bondy"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Bondy acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Bondy is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

37. Individual Defendant, Corrections Officer Mary Beth Coar ("Defendant Coar"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Coar acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Coar is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

38. Individual Defendant, Corrections Officer Sergeant Kate Fanning ("Defendant Fanning"), is and/or was a Corrections Officer and Supervisor at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Fanning acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Fanning is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

39. Individual Defendant, Corrections Officer Jean Pelucacci ("Defendant Pelucacci"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Pelucacci acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison. Defendant Pelucacci is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

40. Individual Defendant, Corrections Officer Rhonda Fiederer ("Defendant Fiederer"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Fiederer acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Fiederer is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

41. Individual Defendant, Corrections Officer Captain Robert Maguire ("Defendant Maguire"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Maguire acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison. Defendant Maguire is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

42. Individual Defendant, Corrections Officer Schnipes ("Defendant Schnipes"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Schnipes acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Schnipes is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

43. Individual Defendant, Corrections Officer James Walsh ("Defendant Walsh"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Walsh acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Walsh is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

44. Individual Defendant, Corrections Officer McPhillips ("Defendant McPhillips"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant McPhillips acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison. Defendant McPhillips is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

45. Individual Defendant, Corrections Officer Leo Baum  ("Defendant Baum"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Hart acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Hart is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

46. Individual Defendant, Corrections Officer Mark Johnson ("Defendant Johnson"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Johnson acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Johnson is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

47. Individual Defendant, Corrections Officer Tammy Miller ("Defendant Miller"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Miller acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  Defendant Miller is being sued in her individual, supervisory, and all other official capacities as a Corrections Officer.

48. Individual Defendant, Corrections Officer Joseph Robert Slobodnek ("Defendant Slobodnek"), is and/or was a Corrections Officer at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, Defendant Slobodnek acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison. Defendant Slobodnek is being sued in his individual, supervisory, and all other official capacities as a Corrections Officer.

49. Individual Defendants, John/Jane Doe Corrections Officers I-X ("John Doe Corrections Defendants"), are and/or were Corrections Officers or held other administrative positions at Lackawanna County Prison, employed by Defendant County, and under the command and authority of Defendant County.  At all times relevant herein, John Doe Correctional Defendants acted under Color of State Law and pursuant to the custom, policy, or practice of Defendant County and/or Lackawanna County Prison.  John Doe Correctional Defendants are being sued in their individual, supervisory, and all other official capacities as Corrections Officers.

# FACTS

## Specific Conduct as to Tammy Fox

50. Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

51. Fox was incarcerated at Lackawanna County Prison from April 4, 2007, through July 11, 2007.

52. When Fox was booked on or about April 4, 2007, she was verbally harassed by c/o Baum, who asked her if she "had a degree for sucking cock" and who told her that she should "suck my cock."

53. During this time, the verbal harassment continued by c/o Walsh, who asked her when he was going to get a lap dance.

54. Walsh also told her, "I'm gonna hit that ass," and asked her if she would have a threesome with him.

55. Fox tolerated this banter in exchange for special treatment from Walsh.

56. Walsh met with Fox outside of the prison, with the expectation of having sex with her.  When she refused his sexual advances and was returned to the prison, Walsh retaliated against her by revoking privileges for not having sex with him.

57. Fox was incarcerated at Lackawanna County Prison during the following dates:

   a.  January 14, 2011 through January 25, 2011
   b.  May 24, 2011
   c.  July 2, 2011, through July 11, 2011
   d.  July 28, 2011, through August 2, 2011
   e.  December  5, 2011, through December 8, 2011
   f.  September 3, 2012, through April 2, 2013

58. During these times, and during each different period in which she was incarcerated, Fox was continually sexually assaulted and harassed by c/o Schnipes.

59. In approximately December of 2010 or early 2011, a Grand Jury was convened and Schnipes was one of the targets of the investigation; Lackawanna County, Lackawanna County Prison, the District Attorney, and other prison officials were aware of this proceeding.

60. In part, the allegations against Schnipes concerned the sexual assault of a female inmate by the name of Mary Sleboda.

61. No criminal charges were filed, and the Prison did no internal investigation of Schnipes, allowing him to continue to work in the facility and to have access to and unmonitored contact with female inmates, including Fox, who he thereafter sexually assaulted.

62. Donald Frederickson, spokesperson for Lackawanna County, essentially acknowledged that, to be qualified for employment at the county prison, an individual need only tailor his or her actions to ensure avoidance of criminal prosecution when he stated: "The allegations contained in the amended complaint have been previously investigation by the District Attorney's Office.  No charges were ever brought against any employee other than Mr. Black."  Noteworthy, Mr. Frederickson mentioned no investigation conducted by prison personnel into Schnipes or any other c/o who was purportedly "investigated" by the District Attorney's Office.

63. Many of the sexual assaults that Fox was subjected to occurred after the Prison had direct knowledge of Defendant Schnipes' prior sexual assaults upon female inmates.

64. Between January 2011 and September 2013, Fox was continually sexually assaulted and harassed by Schnipes.  This was a direct result of the Lackawanna County Prison administration's and/or prison board's complete and utter failure to either discipline Schnipes and/or terminate his employment.  It was also a direct result of the Lackawanna County District Attorney's Office, in unison with prison officials and the prison board, covering up Schnipes' past rapes.

65. Specifically, while Fox was on recreation, Schnipes would call her into the recreation room and grope her private parts in exchange for cigarettes.

66. Schnipes also, on multiple occasions during these period of time, took Fox into the recreation office, put his hands down her pants, digitally penetrated her, and forced her to stimulate his penis, causing him to ejaculate on her.

16

The longer Fox tolerated this assault, the more cigarettes Schnipes would give her.

67. These assaults happened frequently and regularly when Fox was incarcerated beginning in 2011, through her incarceration in 2013.

68. In November 2011, the Lackawanna County Prison, then Interim-Warden Mooney and/or Warden McMillan, and Captain Maguire were placed on notice that c/o Black forcibly raped inmate April Pleasants and had sexual relations with numerous other female inmates.

69. In 2011, Schnipes forced Fox into an elevator with Defendant Black, where Black forcibly groped Fox's private parts, forcing his hand down her pants as she resisted.

70. Black was fired from Lackawanna County Prison in November 2011 for having sexual relations with female inmates. Noteworthy, Maguire and McMillan and/or Mooney were specifically aware of the allegations made by April Pleasants against Black and continued to allow him to have unmonitored contact with female inmates for several weeks thereafter before he was fired.

71. Maguire was informed of Black's sexual activity with female inmates in January 2011 when Scranton City Police Officers and the Lackawanna County District Attorney's Office notified him that Black was having sexual relations with inmate Jennifer Pasco.

72. A grand jury investigation against c/o Schnipes was conducted in late 2010 / early 2011 in regards to his sexual activity with female inmates; Lackawanna County, Lackawanna County Prison, and prison officials were aware of this proceeding.

73. Schnipes was ultimately forced to resign from Lackawanna County Prison in 2013 for having sexual relations with female inmates. As usual, high ranking personnel within the Prison, including the named Defendants, "sugar coated" the reason for his termination, which sent a message to other prison employees that they could engage in inappropriate sexual contact with inmates with impunity and without consequence.

74. Schnipes routinely kept a "sign-up sheet" secreted in female blocks of the prison where inmates could sign-up to have sexual relations with him. Other guards knew of this sign-up sheet and did nothing to curtail Schnipes. Upon information and belief, Defendant Schnipes engaged in sexual activity with at least a dozen inmates during his tenure at Lackawanna County Prison.

75. Fox was incarcerated at the Lackawanna County Prison on the following dates:

      a.   July 31, 2014 through August 26, 2014
      b.   June 7, 2015, through August 14, 2015

76. During Fox's 2014 incarceration, she was subject to sexual harassment and sexual assault by c/o Johnson and c/o McPhillips. During this year, Fox was fondled by these Defendants and forced to endure them rubbing their erect penises over her body.

77. In 2015, Johnson was rubbing up against Fox with his private parts, on her private parts for sexual gratification in exchange for special treatment.  Fox could feel Johnson's erect penis pushing against her body.

78. Johnson verbally harassed Fox, saying "I can't wait to fuck you" and "I bet your pussy tastes so good."

79. Johnson would call Fox out to the bubble to give Fox candy.  During these times he would continually harass Fox and tell her to "suck his big black cock," while he fondled her and touched her private parts.

80. In 2015, McPhillips forced Fox to take her shirt off and expose her breasts in exchange for special treatment.  While this occurred, two other unknown officers, John and Jane Doe, watched from the Bubble. All three laughed and used derogatory language towards Fox, including calling her a "whore."

81. Fox's relationship with McPhillips started in 2012/2013, when McPhillips told her he "wants to get in that ass."

82. McPhillips would constantly sexually harass Fox while she was in work release.

83. While Fox was in work release in 2012/2013, McPhillips had constant sexual and sexually harassing conversations with Fox. McPhillips would coerce Fox to have sex with him while she was on house arrest.

84. In 2013, while Fox was on house arrest, McPhillips took Fox from house arrest to give her alcoholic beverages and have sex.

85. At this time, prison officials in charge of house arrest and work release, including Staff and Cherelli, had direct knowledge that the female inmates in those programs were being sexually abused by prison employees.

86. Specifically, Staff's own son, a c/o, with his father's knowledge, was having sexual relations with female inmates.

87. In 2015, Fox went back into the prison.  McPhillips gave her a radio and special treatment in exchange for sexual favors.

88. In 2015 McPhillips would call Fox out of recreation.  McPhillips would rub up against Fox with his erect penis for sexual gratification and fondle her private parts.

89. McPhillips would force Fox to undress for him while she was working on the block. He forced her to show him her breast in exchange for privileges not afforded to other inmates who refused to engage in such conduct.  While this occurred, two unknown officers, John Doe Correctional Defendants, watched from the Bubble.

90. When Fox went on house arrest in 2015, McPhillips would verbally and sexually harass Fox constantly.

91. Also in 2015, c/o Baum told Fox that the reason the guards liked her was because she put up with their sexual harassment and misconduct, unlike the other girls, Allison Demy and April Pleasants, who ratted them out. She was referred to as "one of daddy Dittfield's girls", a prior correction officer and/or lieutenant who would routinely have female inmates come into his office to engage in sexual activity.

92. Demy and Pleasants were 2011 victims of prison rape at the hands of Black.

93. In 2016, McPhillips sent text messages to Fox, including the following:

    a. "I wish I could have u again.  I've wanted u so bad."

    b. "Guess I'll never get to c that ass again."

94. This occurred when Fox was still under house arrest, work release, and/or probationary supervision.

**Specific Conduct as to Jamie Tompkins**

95. Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

96. Relevant to the instant case, Jamie Tompkins was incarcerated on the following dates:

    a. November 10, 1998, through December 1, 1998
    b. August 10, 1999, through November 18, 1999
    c. March 14, 2000, through December 19, 2000
    d. July 22, 2002, through August 7, 2003

> e.  March 15, 2004, through October 20, 2004
> f.  December 2, 2005, through July 18, 2006
> g.  October 26, 2006, through June 5, 2007
> h.  August 13, 2008, through May 8, 2009
> i.  March 30, 2010, through August 3, 2010
> j.  October 12, 2010, through December 14, 2010
> k.  February 11, 2011, through June 30, 2011
> l.  November 13, 2013, through November 15, 2013

97. Tompkins first met corrections officers from the Lackawanna County Prison while she was working as an exotic dancer and they were clients at the strip club at which she worked.

98. Tompkins was first incarcerated in 1998, and, as a result of their earlier interactions at the strip club, the guards knew her to be an exotic dancer and began to sexually harass her and ask to see tattoos that they knew were on her private parts.

99. Patrick Padula and other male guards who handled inmate mail in the Prison began to open Tompkins' mail which contained explicit pictures of her, sent by her significant other.

100.    Guards, would then sexually harass her to show them the naked pictures of herself.

101.    These corrections officers included, but were not limited to Edward Williams, Patrick Padula, William Shandley, Leo Baum, Captain Cherelli, and James Tolan, and in addition to asking for these pictures, these officers constantly and repeatedly sexually harassed Tompkins during that time.

102.    Corrections officers Baum and Shandley continuously watched her showering and getting out of the shower naked in her cell.

103.    Shandley groomed Tompkins, who was initially very unwilling to accept his advances, by making her believe she needed him to survive in prison and to get special treatment.

104.    Tompkins and another female inmate were placed on work release and began to work at the then Clarion Hotel.

105.    While the two women were working at the Clarion, c/o Williams and c/o Shandley showed up and rented a room for the four to engage in sexual relations.

106.    Tompkins felt uncomfortable and would not go in, but Williams went in with her coworker, and the two had sexual relations.

107.    One day, when returning to the Prison from work, Tompkins was met by c/o Cherelli, who took her back out of the Prison and out to the curb, where she was picked up in a car by Shandley.

108.    Shandley proceeded to drive her behind Nicholas' and sexually assaulted her against her will, while in full uniform.

109.    This happened a second time on a subsequent date.  On the first date, Shandley put her into a light colored car and raped her in the front seat of the vehicle.  On the second date, he picked her up in an all black car and sexually assaulted her in the back seat.

110.    Tompkins eventually was placed in the hole by female corrections officers who wrote her up in retaliation for her relationship with Shandley.  After this, Tompkins asked to be placed in the hole because she thought she would be safe there from the sexual harassment and advances of male corrections officers.  She was not safe.

111.    Shandley continuously and on numerous occasions went into Tompkin's cell in the hole and sexually assaulted, sexually harassed, and verbally abused her.

112.    Tompkins wrote a letter to corrections Cherelli, complaining of Shandley constantly assaulting her.

113.    Cherelli replied by telling her to shut up because Shandley was married and she would get him in trouble.

114.    This report caused Shandley to retaliate against Tompkins by leaving her in the hole longer than necessary, telling her that he would let her rot there.

115.    During the approximate years of 2005 through 2009, c/o Schnipes and c/o Walsh began to sexually abuse Tompkins when it became clear that she no longer 'belonged to Shandley.'

116.    Schnipes would repeatedly take Tompkins into the recreation room, and while there, he would grope her, masturbate in front of her, force her to masturbate his penis, and ejaculate on her.

117.    Schnipes would also constantly sexually harass her at this time.

118.    Additionally, in retaliation for Tompkins fighting his sexual assaults, he retaliated by putting her boyfriend, as an inmate, in the hole.

119.     Between the years of 2007 and 2009, c/o Walsh sexually assaulted Tompkins at least seven times.  Two of these incidents happened in the stairwell, and five occurred in her cell.  This happened to Tompkins against her will in exchange for providing her with cigarettes, underwear, money, and other privileges.

120.     On at least a dozen occasions, Tompkins wrote to Timothy Betti, a policymaker and the assistant warden, begging for help and complaining of the sexual assaults by Walsh, Schnipes and Shandley.  Betti tore up her complaints and sent officers into her cell to destroy her complaints.  He refused to take action which would have prevented the rapes of Demy and Fox.  These individuals just became aware of his role in this scheme.

121.     Tompkins attempted to file numerous grievances.  These grievances were destroyed and ultimately went unanswered.

122.     Tompkins went to c/o Carroll in person, begging her for assistance.  Carroll and c/o Fanning laughed at her and only replied that she was a stripper.

123.     Tompkins was then called to the shift commander's office by Cherelli and Fanning.  They berated her, and threatened her, telling her that they would ruin her life if she exposed the prison.  Cherelli spit on her.

124.     Tompkins first met Maguire in late 2009 or early 2010 when he was investigating a physical altercation between her and another inmate and Tompkins was in the hole.

125.     Maguire told Tompkins that he knew about her 'sexcapades' with Shandley, and then he attempted to kiss her.  Tompkins refused his advances.

126.     Maguire coerced her, telling her that bad things would happen to her in the prison and that she would be retaliated against if she did not sexually service him.

127.     Maguire then forced her to give him oral sex.

128.     Within thirty days, Maguire was constantly visiting her in the hole to sexually assault her.  This continued constantly and repeated each and every time Tompkins was incarcerated between the years of 2010 and 2013.

129.     Maguire's mistreatment of Tompkins continued after she was released from Lackawanna County Prison.

130.     Between the years of 2013 and 2016, while Tompkins was on the street, Maguire stalked her and repeatedly sought her out.  This happened on a

regular bases and permeated each year in which Tompkins was released. When he found her, he regularly forced her to engage in sexual relations with him. This happened in numerous locations around the Middle District of Pennsylvania, in particular sleazy hotels in Dunmore and Moosic up to and including the year 2016.

131.    Tompkins remains on Court supervision to this day. Maguire constantly threatened her that he would retaliate against her physically and also have her violated on her probation and/or parole if she did not have sex with him and if she reported his behavior to anyone.

132.    During these encounters between 2013 and 2016, Maguire would meet with Tompkins under the guise of conducting criminal investigations, asking her about drug activity and activity of those who he was familiar with in the prison. When he did so, Maguire would remind her that he was in a position of power and that he could have her brought back to the Prison on a violation with a simple phone call if she did not comply.

133.    In the alternative, if Tompkins had sexual relations with him, he would do what he could to ensure she did not get violated and also guaranteed her that she would be taken care of if she ever did return to the prison.

134.    During these encounters, Maguire would force Tompkins to conduct what she believed to be controlled drug purchases for law enforcement purposes and would then sit and watch her while she got high, causing her to succumb to his advances.

135.    Maguire would go to Tompkins' mother's home, in full uniform, and present his badge to her, threatening that he would retaliate against Tompkins if she did not tell her where she was and help her find her. This behavior continued into 2016.

**Specific Conduct as to Allison Demy**

136.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

137.    Relevant to the instant case, Allison Demy was incarcerated on the following dates:

a.    April 5, 2002, through April 12, 2002
b.    February 25, 2003, through November 3, 2003
c.    August 21, 2006, through September 10, 2006
d.    December 21, 2006, through February 2, 2007
e.    February 26, 2007, April 5, 2007
f.    April 18, 2007, through August 15, 2007

23

    g.  October 17, 2009,
    h.  March 09, 2011
    i.  June 3, 2011, through September 29, 2011
    j.  August 10, 2012, through August 11, 2012
    k.  October 12, 2012
    l.  November 20, 2012, through December 19, 2012

138.    When Demy was incarcerated in 2002 through 2003, she was repeated sexually assaulted while in the hole by a male c/o who was ultimately fired for impregnating another female inmate.

139.    When she became re-incarcerated in 2006, Joseph Black began to sexually assault Demy and give her treats and privileges in exchange for her cooperation.

140.    Black, with the assistance of other corrections officers, would often dress Demy in a Sheriff's uniform and escort her out of the prison for nights and/or weekends so that he could sexually assault her.

141.    Black raped Demy daily over the course of time between 2006 and September 29, 2011, each and every time Demy was incarcerating, with no more than days passing between sexual assault.  This took place in multiple areas of the prison including Demy's cell, recreation, and medical.

142.    The abuse escalated in 2011, in retaliation for not going to Black when she was on the outside, when Black began to rape her anally, in addition to vaginally.

143.    Black threatened the lives of her and her children at this time.

144.    At the times that she was out of prison, Black would stalk and harass her, going to her family's home in an attempt to locate her.

145.    Black then threatened to have her parole revoked if she did not have sexual relations with him.  He also threated to retaliate against her boyfriend who was in the prison.

146.    Black has since pled guilty and admitted this conduct.

147.    On October 12, 2012, following a hearing before Judge Thomas Munley, at which Judge Munley ordered that Demy be taken to the prison to get her things that were there and ordered that she not remain in the prison for more than minutes due to the now exposed actions of Black, Demy was taken to the prison.

148.    Demy was held illegally, against her will, and in violation of Judge Munley's order, for hours by corrections officers including, but not limited to c/o Baum and c/o Novack.

149.    These corrections officers restrained her in a locked room and repeated in throwing freezing cold and scalding hot water on her.  They also threw food on her.

150.    All the while, these officers sexually harassed Demy, called her a dog and a rat, and threated her life if she spoke again about Joseph Black or any of the other mistreatment that she suffered while in the prison.

151.    These officers called Black on the telephone, saying they had his girl Demy there, asking what he wanted them to do to her.

152.    The female corrections officers working on Demy's block knew about Black's assaults of her, often commenting to her about how she was his girl.

153.    Demy specifically told c/o Calpin she was being raped, and Calpin refused to help.

154.    Black knowingly and opening put inmates in the hole who Demy got close to so that she could not inform on him.

155.    Maguire, the very person tasked with investigating Black, knew of Black's behavior with Demy and had had drinks with Demy and Black outside of the prison while Demy was on parole.

**Specific Conduct as to Joanne Perri**

156.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

157.    Relevant to the instant case, Joanne Perri was incarcerated on the following dates:

    a.  March 20, 1998, through June 10, 1998
    b.  June 20, 1998, through March 18, 1999
    c.  March 30, 1999, through September 30, 1999
    d.  October 27, 1999, through November 24, 1999
    e.  July 18, 2001, through October 8, 2002
    f.  July 6, 2009, through August 7, 2009
    g.  December 14, 2009, through June 18, 2010
    h.  August 22, 2011, through October 27, 2011

158.    During her incarcerations in 1998 and through 2002, Schnipes, on multiple occasions, forced Perri to give him oral sex in the gymnasium of the gym.

159.    During Perri's incarceration in 2009 through 2010, c/o George McHale, during the week between Christmas Eve and New Years Eve, stuck his penis into Perri's cell, and forced her to masturbate his penis, threating to take her shower and recreation privileges away if she did not comply.

160.    During all of Perri's incarcerations prior to that time, she had been constantly sexually harassed by McHale and other guards, being told that they wanted to 'bend her over and hit that' and "shove [their] dick in [her] mouth."

161.    Perri was specifically harassed between the years 1999 and 2011 by officers Walsh and Slobodnek, forcing her to show them her private parts.

162.    In 2009, Perri began experiencing similar harassment from Maguire. This harassment began as verbal but escalated into groping and her being placed in the hole when she did not comply with the groping.

163.    Perri complained to c/o Snyder and c/o Shedlock, but they didn't listen, telling her she that was dumb and that all she did was sleep all day.

164.    Perri filed multiple grievances, but they were destroyed and/or never responded to.

## Prior Tortious Conduct

165.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

166.    Allison Demy was an inmate at Lackawanna County Prison for prolonged periods of time between 2005 and 2016.

167.    When Demy was first incarcerated in 2005, she began having sexual relations in the prison with Defendant Black, a corrections officer.

168.    This sexual relationship continued each time Demy became incarcerated as well as through the times in which Demy was released from the prison.

169.    While released from the prison, Demy and Black would visit with Defendant Maguire, Defendant Bondy, Defendant Calpin, and Defendant Schnipes.

170.    During these visits, the group discussed Defendant Black and Demy's sexual relations while in the prison, placing all of these individuals on notice of Black's behavior.

171.   When Demy returned to the prison, other, unknown, guards harassed her, calling her "Joe's girl" in reference to her sexual relationship with Defendant Black while in the prison.

172.   In 2011, while incarcerated, Demy was anally raped against her will by Defendant Black.

173.   After this assault, Demy asked Defendant Calpin for assistant, but was ignored.

174.   When Defendant McMillan became Warden, Demy attempted to alert him regarding the assault, but was stopped by Defendant Black and other, unknown guards.

175.   It is clear that Defendant McMillan understood Demy, though, because she was transferred to home detention the very next day. This transfer was not pursuant to any court order or request by her attorney.

176.   During the times in which Demy was incarcerated, with the knowledge of other corrections offices, Defendant Black would dress her up in a Sheriff's uniform in order to remove her from the prison and sexually assault her.

177.   Also during times in which she was incarcerated, Demy would act as a lookout while Defendant Maguire was having sexual relations with female inmates, including Jamie Tompkins.

178.   Maguire would pay Tompkins rent when she was outside of prison in order to buy her silence on the sexual assaults.

179.   On another date, Demy was brought to Lackawanna County Prison to pick up clothes that were being stored there.

180.   Defendant Hart knew about Demy's sexual relationship with Black and knew that she had gone public with the information.

181.   In retaliation, Hart held Demy for six hours without probable cause.

182.   During this time, hot water, cold water, and food were thrown at Demy, and Defendant Hart called Defendant Black in her presence to harass her.

183.   During this time, Defendant Hart threatened to kill Demy if she testified against Black.

184.   Defendant Calpin had knowledge of male corrections officers sleeping with female inmates prior to the times in which Fox was assaulted.

185.    Specifically, Calpin admitted in deposition on March 1, 2016, that she was aware of Defendant Black sexually assaulting Jennifer Pasco prior to June 2011 and that she did not report it because there was a culture of cover-up between corrections officers at the prison.

186.    Defendant Bondy had knowledge of male corrections officers sleeping with female inmates prior to the times in which Fox was assaulted.

187.    Defendant Coar had knowledge of male corrections officers sleeping with female inmates prior to the times in which Fox was assaulted.

188.    Defendant Fiederer had knowledge of male corrections officers sleeping with female inmates prior to the times in which Fox was assaulted.

189.    Defendant Slobodnek had knowledge of male corrections officers sleeping with female inmates prior to the times in which Fox was assaulted.

190.    Defendant Pelucacci had knowledge of male corrections officers sleeping with female inmates prior to the times in which Fox was assaulted.

191.    Defendant Pelucacci admitted in Deposition on March 21, 2016, that there was a culture of silence at the Lackawanna County Prison wherein Corrections Officers would not report sexual abuse of inmates and that if such reports were made, there would be retaliation against the person making the report.

192.    Defendant Wolff had knowledge of male corrections officers sleeping with female inmates and sexually harassing female inmates prior to the times in which Fox was assaulted.

193.    Wolff's knowledge began prior to June 9 2011, but it is believed that it predated that date.

194.    In 2015, Defendant Miller caught male officers giving special treatment in exchange for sexual favors.

195.    Defendant Miller approached Fox about her harassment and assault at the hands of male corrections officers.

196.    Defendant Miller, despite this knowledge, did not report the conduct and did nothing to stop the conduct from continuing in the future.  The conduct did, in fact, continue.

197.    Defendant Neveroski had knowledge of male corrections officers sleeping with female inmates prior to the times in which Fox was assaulted.

198.   Defendant Fanning had knowledge of male corrections officers sleeping with female inmates prior to the times in which Fox was assaulted.

199.   Sergeant Fanning's understanding of the police at the Lackawanna County Prison, per her March 21, 2016, Deposition, was that officers were not required to report sexual abuse of inmates by other officers and that if such a report were made to her, "I don't think I would do anything about it."

200.   While in the prison, Tompkins overheard Tom Staff speaking to his son, Jeff Staff, admonishing him for sleeping with female inmates, telling him he was going to get in trouble.  Tom Staff did nothing to report this behavior.

201.   The knowledge of Defendant Black and other corrections officers having sexual relations with female inmates was common knowledge in the prison.

202.   This common knowledge existed in the prison prior to November 2009.

203.   Defendant Maguire was having sex with female inmates prior to the times in which Fox was assaulted.

204.   Thereafter, prior to Fox being assaulted, Defendant Maguire was promoted to Captain, a policy-making position, where he did nothing to stop future assaults against female inmates.

205.   Scranton Police Officer David Mitchell confirmed in Deposition on March 1, 2016, that Maguire, Captain and Policy Maker at Lackawanna County Prisons, was placed on notice as early as January 4, 2011 about the sexual abuse of female inmates at the Lackawanna County Prison.

206.   Upon information and belief, many of the named Defendant Correctional Officers testified in front of the Grand Jury that was commenced in order to investigate Black and perjured themselves, indicating that they had no information concern Black having inappropriate sexual contact with female inmates prior to the Pleasants' rape.  This is the most egregious example of a prison wherein a culture of silence exists amongst Correctional Officers.  This custom is well known and/or practiced by the administrators at the Lackawanna County Prison.

207.   Despite the fact that some of the Defendant Officers named in this suit perjured themselves and failed to report known sexual assaults of female inmates, those individuals continued to work at the Lackawanna County Prison and suffered no sanctions and/or consequences.

208.   In 2007, several corrections officers were criminal charged with abusing inmates.

209.    In 2007, a pregnant inmate was left alone, unattended, ignored, and deprived of any medical treatment and endured childbirth alone in an inhumane, unsanitary, jail cell.  Despite repeated cries for help, Corrections Officers and other agents ignored her and her newborn as well as treated them with deliberate indifference and callous disregard.

210.    Between 2008 and 2009, Nicholas Pinto was continuously raped by another inmate, Galliago, and this conduct was known by Correctional Officers.

211.    Despite Galliagho being known as a violent offender and rapist, Lackawanna County then prison warden, Janine Donate, and Corrections Officers permitted and/or intentionally placed Galliago, as a form of punishment and retaliation, in an unmonitored cell with Pinto and other inmates, who were then physically and sexually assaulted.

212.    Then Chaplain William Pickard wrote a letter to the Lackawanna County Commissioners regarding Pinto's rapes.  Despite notice of this outrageous and reprehensible conduct and life-threatening situation, the Commissioners and Supervisors at the prison did nothing.  They ignored the situations with deliberate indifference and callous disregard.  Furthermore, in addition to this willful ignorance, Chaplain Pickard was affirmatively barred from admission into the prison to counsel inmates.

213.    As a consequence of Lackawanna County Prison's deliberate indifference and callous disregard, Pinto was later viciously assaulted by another inmate in an unmonitored area.

214.    Despite a $975,000 settlement in the Pinto matter, Lackawanna County Prison continued to treat this specific patterns of conduct and systemic inhume conditions with deliberate indifference and callous disregard.

215.    When questioned by Federal Authorities about incidents with Pinto and other victims, Donate concede deliberate indifference and callous disregard as indicated by her statement that "there was no conclusive evidence Mr. Pinto was raped."

216.    Female inmates at the Lackawanna County Prison have been continuously subjected to institutional sexual assault for over a decade, and officials at the prison and in the county have had knowledge of these assaults.  This conduct includes but is not limited to the following:

    a.    A prison lieutenant, Verne Dittfield, continuously raping female inmates, who other guards then referred to as "daddy Dittfield's girls;"

b.  Jennifer Pasco's sexual assaults by Black;

c.  April Pleasant's sexual assaults by Black;

d.  Shawna Mecca's sexual assaults by Black;

e.  Allison Demy's sexual assaults by Black;

f.  Amanda Smith's sexual assaults by Black;

g.  LaQuan Sartin's sexual assault by Black;

h.  Sexual advances toward Amelia Lockwood by Corrections Officers Joseph Dominick and Black.

i.  Allison Demy's sexual relationship with Corrections Officer Robert Meyers;

j.  Defendant Schnipes' sexual assault of Selina Schooly;

k.  Defendant Schnipes' sexual assault of Shawna Mecca;

l.  Defendant Schnipes' sexual assault of Mary Sleboda;

m.  Defendant Schnipes' sexual assault of Jamie Tompkins;

n.  Defendant Schnipes' sexual assault of Joanne Perri;

o.  Correction Officer Jeff Staff's sexual activity with Shannon Parchinski at her home while on work release;

p.  Defendant Maguire's sexual assaults of Jamie Tompkins

q.  Defendant Maguire with an unknown female inmate from Lourdsmont, incarcerated for an assault on a teacher

r.  Defendant Shandley's sexual relations with Joanne Tompkins

s.  Defendant Walsh's sexual relations with Jamie Tompkins

t.  Mark Johnson's sexual relations with Tammy Fox

u.  Eve Taylor's sexual assault with an unknown officer who impregnated her

v.  Michelle Weiss' sexual assault by Edward Williams

    w.  Defendant McPhillips sexual assault of Tammy Fox

    x.  Schnipes sexual assaults Michelle Loch.

### Policy Conduct

217.   Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

218.   A culture of silence exists and has existed at Lackawanna County Prison in which both inmates and corrections officers were expected to not report misconduct of corrections officers.

219.   This custom was known and ignored by those in authority, resulting in Plaintiff's mistreatment and sexual assault.

220.   If inmates reported misconduct by corrections officers, they would lose their privileges, lose their jobs at the prison, be subject to physical beatings, and be placed in the hole

221.   If corrections officers reported other corrections officers, they would also face retaliation.

222.   Corrections officers at the prison were never trained in regards to sexual assault and/or sexual harassment of inmates, even after the need for training was obvious to defendants in authority positions.

223.   Male Corrections Officers, including Defendant Black, often requested to do rounds on all-female units of the prison.

224.   Lackawanna County Prison Policy Makers, including the individually named Defendant's in this suit, over the course of the time relevant to this case, held regular meeting to discuss prison matters and to set policy.

225.   These meetings were held off the record.

226.   Often in these meetings prison sexual assault and harassment of inmates was discussed by policy makers.

227.   When these issues were discussed, the meeting was taken off of the record to ensure that there was no paper trail.

228.   After discussing the issues, nothing was done to remedy the problems. No policy was set or amended, despite knowledge of the need, to prevent sexual abuse and harassment of inmates.

229.    There was a policy at Lackawanna County Prison of failing to discipline officers for conduct and/or reporting bad conduct by other officers, which directly resulted in Plaintiff's injuries.

230.    Lackawanna County's policy of allowing male guards work on female units directly caused Plaintiff's injuries in this matter.

231.    Lackawanna County failed to train its prison guards in reporting and sexual abuse and harassment of inmates, despite the fact that they knew of the need for this policy when they were put on notice of Black and Schnipes' actions in 2011.

232.    On paper, Lackawanna County prison had a protocol that sexual conduct with those in the prison system by corrections officers outside of the prison must also be reported, but as a matter of course, that protocol is not followed.

233.    As a result of officers with knowledge failing to report, per this prison culture, Plaintiffs were continuously victimized inside and outside of the prison by Defendants.

234.    All individuals in this Complaint alleged to promulgate policy on behalf of Lackawanna County also do so on behalf of the Lackawanna County District Attorney's Office.

235.    All prison policymakers working at the time, including Mooney, Maguire, and O'Malley had knowledge of the sexual abuse of female inmates at the Prison prior to June 1, 2011.

236.    Commissioner O'Malley, who also sits on the Prison Board, knew of the rape of female inmates beginning in at least 2010 and did nothing to change policy or to terminate any of the guards responsible.

237.    O'Malley specifically leaked information that he learned from Prison Board meetings to Casey Calpin, warning her that she was going to be investigated. This was part of the cover-up and conspiracy perpetrated by him and other policy makers which caused Plaintiffs to be assaulted and caused the delay in them uncovering the current cause of action.

**Allegations Regarding the Statute of Limitations as to All Plaintiffs**

238.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

239.    Between the years 2009 and present, Lackawanna County, the Lackawanna County Commissioners, the Lackawanna County District

Attorney's Office, and upper-level management at the Prison, conspired to facilitate a wide-spread cover-up of the sexual abuse of female prisoners at the Prison.

240.    In 2010, female Prison inmate Mary Sloboda held up a sign in the visiting room of the prison to her mother, which asked for assistance because she was being raped by corrections officers.

241.    It is believed and therefore averred that the c/o was Schnipes.

242.    A grand jury was impaneled in late 2010 or early 2011 to investigate this abuse.

243.    John and Jane Doe District Attorneys and Staff from the Lackawanna County District Attorney Office were charged with investigating and prosecuting the case before the grand jury.

244.    This created a severe conflict of interest because the District Attorney at the time sat on the prison board.

245.    The John and Jane Doe District Attorney Staff intentionally and willfully, in conjunction with County Officials and Prison Officials mishandled, botched, and covered-up the investigation with the aim of protecting the Prison and Schnipes, allowing Schnipes to continue to work at the Prison and assault Plaintiffs in this matter.

246.    In January 2011, Maguire, the Prison official tasked with investigating sexual assault in the Lackawanna County Prison, found evidence corroborating Sloboda's claim of being raped.

247.    Maguire had video surveillance of this corroboration which he, in conjunction with the conspiracy and cover-up described above, deleted that information to protect guards and permit the sexual assaults to continue to occur at Lackawanna County Prison.

248.    Maguire failed to interview other inmates in order to conceal his own sexual assault of female inmates.

249.    Later in 2011, Maguire interviewed Tompkins, who told him about Schnipes and other guards raping female inmates.

250.    Maguire was provided with supporting documents and photographs confirming what Tompkins told him about Schnipes.

251.    Lackawanna County Officials, Prison Officials, and District Attorney Officials conspired with Maguire to cover up this evidence.

252.    Furthermore, during the course of a 2013 grand jury investigation into Joseph Black, information was requested from Maguire and the Prison regarding Schnipes' assault of female inmates.

253.    Rather than turn this information over and make anything public, Prison and County Officials forced Schnipes to resign and failed to turn over any of the requested information.

254.    This cover-up concealed the instant cause of action, rendering Plaintiffs initially unable to bring suit.

255.    John Doe District Attorney Staff willfully covered up the wrongdoing of corrections officers at the prison and actively tipped these individuals off to investigations that could be pending against them.

256.    This cover-up caused the injuries to Plaintiffs in this matter as it permitted Schnipes to continue to work at the Prison and rape inmates.

257.    None of this cover-up was known by Plaintiffs or could have reasonably been known to Plaintiffs until late 2015 when Defendant Black was deposed regarding the April Pleasant's sexual assault.

258.    In addition to this cover-up culture, there was a culture of retaliation at the Lackawanna County Prison.

259.    The custom at the Prison was to rip up and destroy complaints and grievnces regarding female sexual abuse.

260.    The custom at the Prison was to retaliate against employees who told on other employees through employment related retaliation.

261.    The custom at the Prison was to retaliate against inmates who reported sexual abuse by further sexually abusing them, physically abusing them, and punishing them with misconducts.

262.    The custom by and between Prison employees was to threaten retaliation in the form of probation/parole violations to stop women from disclosing the sexual abuse that occurred at the prison.

263.    Plaintiffs in this suit, in particular Demy, were actually physically and emotionally retaliated against by Prison staff.

264.    Lackawanna County Officials, Prison Officials, and District Attorney Officials purposely engaged in a pattern of fraudulent concealment of

35

information which caused Plaintiffs to not know a cause of action existed against the County or Prison.

265.     Defendants in this matter, due to their fraudulent concealment and retaliation have unclean hands which prevented the timely filing of a suit and should be precluded from relying on the statute of limitations as a defense.

**Allegations Regarding the Statute of Limitations as to Tammy Fox**

266.     Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

267.     The aforementioned factual averments regarding Tammy Fox constitute a continuing tort or affirmative actions that extend the abuse she suffered into the statute of limitations.

268.     Fox was specifically and particularly abused by Lackawanna County and its officials and employees distinctly in each of the following years: 2011, 2012, 2013, 2014, and 2015.

269.     This abuse was perpetrated by a common plan, scheme, custom, and conspiracy which linked all of the affirmative actions complained of and which yields a statute of limitations which runs into 2017.

270.     The polices and customs which caused Fox's injury were prevalent both in and outside of the statute of limitations and directly caused Fox's injuries.

271.     Fox had numerous mental health diagnoses prior to her relevant incarceration as alleged above including, but not limited to, bi-polar disorder and memory loss.

272.     As a result of her mistreatment at the Lackawanna County Prison, Fox's mental health problems and memory loss have been exacerbated, and she now suffers from post-traumatic stress disorder.

273.     It took Fox years and the assistance of mental health providers to come to terms with the abuse she suffered and the effect it had on her mental health.

274.     A final diagnosis was not made until approximately July 2016.

275.     Moreover, the first time Fox learned of allegations of Schnipes' sexually assaulted numerous other inmates, with the knowledge of policymakers and county officials, was in 2016.

276.     Again, this is caused by and is part and parcel of the coverup by Defendants.

**Allegations Regarding the Statute of Limitations as to Jamie Tompkins**

277.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

278.    The aforementioned factual averments regarding Jamie Tompkins constitute a continuing tort or affirmative actions that extend the abuse she suffered into the statute of limitations.

279.    Tompkins was specifically and particularly abused by Lackawanna County and its officials and employees distinctly in each of the following years: 2011, 2012, 2013, 2014, 2015, and 2016.

280.    This abuse was perpetrated by a common plan, scheme, custom, and conspiracy which linked all of the affirmative actions complained of and which yields a statute of limitations which runs into 2018.

281.    Tompkins remains under probation/parole and/or incarceration to this date and fear filing of suit due to retaliation.

282.    The first time Tompkins learned of allegations of sexual assault of numerous other inmates, with the knowledge of policymakers and county officials, was in 2016.

283.    Again, this is caused by and is part and parcel of the cover-up by Defendants.

**Allegations Regarding the Statute of Limitations as to Allison Demy**

284.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

285.    Allison Demy is disabled due to physical and mental health limitations.

286.    In specific regard to her mental health, Demy has been diagnosed with mild mental retardation and has severe learning disabilities.

287.    These conditions rise to a level such that Demy cannot conduct her own affairs.

288.    Specifically, Demy's daughter has Power of Attorney over her and conducts her affairs on her behalf.

289.    Furthermore, Demy has a full-time in home caregiver who assists her in her day to day life.

290.    The allegations contained in this complaint exacerbated Demy's mental health conditions and caused her to receive additional diagnoses for mental health issues including, but not limited to, depression.

291.    In 2011, a grand jury was convened against Black in regards to his sexual assaults of Demy at Lackawanna County Prison while she was a prisoner and he was a corrections officer.

292.    This grand jury culminated in criminal charges on which Defendant Black was ultimately sentenced on or about September 18, 2015.

293.    Lackawanna County District Attorney William Fisher was the lead prosecutor on that matter.

294.    Attorney Fisher met with Demy on multiple occasions between November 2011 and September 2015 in preparation for Black's prosecution.

295.    Attorney Fisher specifically told Demy and her personal caregiver on these occasions that she must not file a civil suit until the criminal prosecution has concluded because it would jeopardize that prosecution.

296.    Attorney Fisher assured Demy that he has an Attorney that could help her pursue her civil claim when the criminal prosecution was over.

297.    Attorney Fisher and the Lackawanna County Detectives assisting him pleaded with Demy not to file a civil suit, claiming she was there main witness, and that the other witnesses were less reliable because they had filed civil suits.

298.    Demy relied on Attorney Fisher's representations in delaying to file a civil claim, which is now outside of the date the statute of limitations would ordinarily have passed.

299.    Moreover, Demy relied on the advice of her guardian, who was informed by Fisher, in failing to file suit, believing that filing would jeopardize the prosecution and would not harm her potential civil suit.

300.    Additionally, during the criminal prosecution between the years 2011 and 2015, Defendant Maguire, then tasked with internal investigations at the Lackawanna County Prison, continually approached Demy at all Court dates arising in the prosecution, threatening her not to file a civil suit.

301.    Maguire, who was at that time sexually assaulting female inmates at the Prison, knew that Demy knew about his current and past sexual assaults of female inmates at the Lackawanna County Prison.

302.   Maguire specifically threated Demy with retaliation if she 'snitched' on him or any of the other male corrections officers who were raping female inmates.

303.   Maguire specifically threatened Demy not to file a civil suit against Black, the County, himself, or any other guards at the Prison.

304.   Demy actually experienced retaliation in 2012, when she was held against her will and verbally and physically assaulted by officers.

**Allegations Regarding the Statute of Limitations as to Joanne Perri**

305.   Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

306.   Perri was incarcerated constantly from December 14, 2009, through the fall of 2015.

307.   Perri did not feel that she was able to file suit while incarcerated because of the threat of incarceration.

308.   As a result of her incarceration, Perri did not have the resources or knowledge to pursue any type of civil claim.

309.   Moreover, the feared legitimately retaliation by those in the prison system.

310.   The prison society referred Perri to a Philadelphia Attorney in 2009.

311.   That Attorney told her that she should not file suit while she was still incarcerated and that she should wait until she was released.

312.   Perri relied on this representation in failing to file suit until this time.

313.   Additionally, Perri was recently, in the year 2016, diagnoses with mental health issues, such as post-traumatic stress disorder, directly related to her mistreatment at the prison.

**Claims for Relief**

**Count I**

**Municipal Liability and Civil Rights Violations Caused By Policy as to Defendant County, Defendant O'Malley, Defendant Wansacz, Defendant Washo, Defendant O'Brien, Defendant Munchak, Defendant Cordaro, Defendant McMillan, Defendant Mooney, Defendant Donatee, Defendant Betti, Defendant Maguire,**

**Defendant Staff, Defendant Jeffers, Defendant Cherelli, Defendant Carroll, Defendant District Attorney and Defendant Fanning upon all Plaintiffs**

**United States Constitution, Amendments I, IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988**

314.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

315.    Defendants County, O'Malley, Wansacz, Washo, O'Brien, Munchak, Cordaro, McMillan, Mooney, Carroll, Donatee, Betti Maguire, Staff, Jeffers, District Attorney, Cherelli and Fanning ("Defendant Policy Makers") developed, implemented, approved, and/or maintained a number of deficient customs, policies, and practiced with deliberate indifference, which proximately caused a deprivation of Plaintiffs' Constitutional Rights.

316.    Defendant Policy Makers' unconstitutional customs, policies and practices encouraged their employees, officers, and agents to believe that they could violate the Constitutional Rights of inmates and Plaintiffs within impunity, without consequence, and with explicit or tacit approval.

317.    Through implementation of custom, policy, practice, ordinance, regulation and/or statements, Defendant Policy Makers, with deliberate indifference and callous disregard, caused harm to Plaintiffs and similarly situated inmates in the following manners:

   a.    By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, Corrections Officers to engage in unmonitored, one-on-one confrontations between male Corrections Officers and female inmates, creating a foreseeably dangerous situation in which female inmates would be sexually and physically harassed and assaulted. Defendant policy makers permitted this to occur despite knowledge of a systemic problem concerning sexual abuse at Lackawanna County Prison.

   b.    By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, intimidation and retaliation by male Corrections Officers against female inmates and other Corrections Officers who reported misconduct.

   c.    By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, unsupervised and unreported job assignment being given to female inmates.

    d.  By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, misconduct from occurring between Corrections Officers and inmates while on "lock down".

    e.  By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, male Corrections Officers to be assigned to and request to be assigned to all female units, where there would be unmonitored contact between Corrections Officers and inmates of different genders.

    f.  By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, noncompliance with State and Federal Prison Laws and the Federal Prison Rape Elimination Act.

    g.  By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, improper and inadequate screening, auditing, and investigation of potential Corrections Officers, Supervisors, and Wardens to be hired.

    h.  By permitting, sanctioning, either implicitly or explicitly, and/or failing to prevent, the deprivation of due process regarding hearings and punishment including segregation, privilege deprivation, and isolation in "the hole" of inmates.

    i.  Failing to train Corrections Officers in dealing with and/or reporting sexual harassment and sexual abuse of female inmates.

318.  The separate and/or conspired acts and/or omission of Defendant Policy Makers, made willfully, callously, recklessly, with gross negligence, and/or with deliberate indifference, and made under the Color of State Law, proximately caused and/or facilitated the violations of Plaintiffs' rights under the United States Constitution, Amendments I, IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988. Specifically, Plaintiffs' Right to Due Process, right to be free from cruel and unusual punishment, right to be housed in a humane facility, right to be free from sexual harassment, right to bodily integrity, and right to privacy were violated.

319.  As a direct and proximate cause of the aforementioned acts and omissions of Defendant Policy Makers, Plaintiffs suffered the injuries and damages set forth herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

**Count II**

**Individual Violations as to Defendant Schnipes, Defendant Johnson, Defendant McPhillips, Defendant Shandley, Defendant McHale, Defendant Black and Defendant Walsh upon all Plaintiffs**

**United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988**

320.     Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

321.     Defendant Schnipes', Defendant Walsh's, Defendant Johnson's Defendant McHales', Defendat Black's, and Defendant Shandley's, and Defendant McPhillips', aforementioned actions of sexual assault and harassment, taken under Color of State Law constitutes a violation of the United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988. Specifically, Plaintiffs' Right to Due Process, right to be free from cruel and unusual punishment, right to be housed in a humane facility, right to be free from sexual harassment, right to bodily integrity, and right to privacy were violated.

322.     As a direct and proximate cause of the aforementioned acts and omissions, Plaintiffs suffered the injuries and damages herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count III

**Conspiracy, Failure to Intervene, Failure to Supervise, and Failure to Report as to Defendant McMillian, Defendant Donatee, Defendant Mooney, Defendant Schnipes, Defendant McPhillips, Defendant Walsh, Defendant Hart, Defendant Black, Defendant Neveroski, Defendant Casey, Defendant Murray, Defendant Coar, Defendant Bondy, Defendant Carroll, Defendant Maguire, Defendant Staff, Defendant Shandley, Defendant Cherelli, Defendan Betti, District Attorney, John Doe District Attorney Defendants Defendant McHale, Defendant Novack, Defendant Wolff, Defendant Pelucacci, Defendant Fiederer, Defendant Fanning, Defendant Calpin, Defendant Pelucacci, Defendant Miller, Defendant Slobodnek, and John Doe Correctional Defendants upon all Plaintiffs**

**United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988**

42

323.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

324.    Defendants McMillan, Donatee, Mooney, Schnipes, McPhillips, Walsh, Hart, Black, Neveroski, Casey, Murray, Coar, Bondy, Maguire, Wolff, Pelucacci, Fiederer, Slobodnek, staff, Shandley, Cherelli, Betti, McHale, Novack, Carroll, Fanning, Calpin, District Attorney, John Joe District Attorney Defendants Miller, and John/Jane Doe ("Defendant Individuals"), directly, indirectly, intentionally, knowingly, and/or recklessly, conspired, aided, abetted, furthered, facilitated, and/or agreed to violate Plaintiff's Constitutional Rights by individual acts and/or omissions, despite a duty to intervene and/or supervise, and despite knowledge of the violation of Plaintiffs' Constitutional Rights.

325.    Defendant Individuals, acting individually and/or in concert and acting under the Color of State Law, failed in their duty to supervise and intervene to prevent the violation of inmates rights and ignored with deliberate indifference the conduct described herein, thereby, violating Plaintiff's rights under the United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988. Specifically, Plaintiffs' Right to Due Process, right to be free from cruel and unusual punishment, right to be housed in a humane facility, right to be free from sexual harassment, right to bodily integrity, and right to privacy were violated.

326.    As a direct and proximate cause of the aforementioned acts and omissions, Plaintiff suffered the injuries and damages herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count IV

**Failure to Supervise as to Defendant O'Malley, Defendant Wansacz, Defendant O'Brien, Defendant Munchak, Defendant Washo, and Defendant Cordaro upon all Plaintiffs**

**United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988**

327.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

328.    Defendants O'Malley, Wansacz, O'brien, Munchak, Washo, and Cordaro ("Defendant Supervisors") are supervisory policy and decision makers for

Lackawanna County Prison, Lackawanna County House Arrest, Lackawanna County Work Release, and Lackawanna County Probation.

329.    Defendant Supervisors knew or should have known of the specific misconduct of the aforementioned individual Defendants and that their customs, policies, and practices created an inherent danger to Plaintiffs and other similarly situated inmates in violation of their Constitutional Rights.

330.    Defendant Supervisors willfully, recklessly, callously, without gross negligence, and/or with deliberate indifference failed in their duty to supervise the aforementioned individual Defendants and other employees, to implement policy to prevent the actions alleged herein, and to take meaningful corrective action for the individual Defendants' conduct.

331.    As a direct and proximate cause of the aforementioned acts and omissions, Plaintiffs suffered the injuries described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count V

### Conspiracy Against All Defendants upon all Plaintiffs

### United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988

332.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

333.    All Defendants directly, indirectly, intentionally, knowingly, and/or recklessly, conspired, aided, abetted, furthered, facilitated, and/or agreed to violate Plaintiffs' Constitutional Rights by individual acts and/or omissions, despite a duty to intervene and/or supervise, and despite knowledge of the violation of Plaintiffs' Constitutional Rights.

334.    All Defendants, acting individually and/or in concert and acting under the Color of State Law, failed in their duty to supervise and intervene to prevent the violation of inmates rights and ignored with deliberate indifference the conduct described herein, thereby, violating Plaintiff's rights under the United States Constitution, Amendments IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988. Specifically, Plaintiffs' Right to Due Process, right to be free from cruel and unusual punishment, right to be housed in a humane facility, right to be free from sexual harassment, right to bodily integrity, and right to privacy were violated.

335.    As a direct and proximate cause of the aforementioned acts and omissions, Plaintiffs suffered the injuries described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count VI

**Retaliation By Defendants Baum, Novack and John Doe Corrections Officers Upon Allison Demy**

**United States Constitution, Amendments I, IV, VIII, and XIV; 42 U.S.C. §§ 1983, 1985, 1986, 1988**

336.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

337.    Defendants Baum, Novack, John Doe Corrections Officers retaliated against Demy, holding her against her will and physically assaulting her because she disclosed that Black had raped her, a protected First Amendment activity.

338.    As a direct and proximate cause of the aforementioned acts and omissions, Plaintiff suffered the injuries described herein.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count VII

**Supplemental State Law Claims for Battery, Harassment, Intentional Infliction of Emotional Distress, Assault, and False Imprisonment against Defendant Schnipes, Defendant McPhillips, McHale, Shandley Defendant Johnson, Defendant Novack and Defendant Walsh**

339.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

340.    The aforementioned acts and conduct of Defendant Schnipes, Defendant Novack, Defendant McPhillips, McHale, Shandley and Defendant Walsh constitute extreme and outrageous conduct that is beyond the bounds of conduct tolerated by a civilized society such that they violate basic concepts

of human decency and shock the conscience of society, which caused severe emotional distress that has manifested in both mental and physical injuries that may be permanent.

341.    By the acts and conduct incorporated herein, Defendant Schnipes, McHale, Shandley and Defendant McPhillips committed false imprisonment by maliciously and willfully detaining and restraining Plaintiff's body from movement in all directions without Plaintiff's consent or legal authority.

342.    Defendants Schnipes, McHale, Shandley, and McPhillips removed and isolated Plaintiff in secret and confined areas from where she could not escape in order to sexually assault her.

343.    Defendant Schnipes, Defendant Walsh, Shandley, McHale, and Defendant McPhillips committed assault in violation of the laws of Pennsylvania by their specific aforementioned actions and conduct in the form of sexually harassing Plaintiffs, threatening retaliation, isolating Plaintiff alone in unmonitored areas, and by threatening Plaintiff, all of which were done to cause Plaintiff apprehension of malicious, intentional, willful, and harmful offensive contact.

344.    Defendant Schnipes, McHale, Shandley, and Defendant McPhillips committed battery in violation of the laws of Pennsylvania by their specific aforementioned actions and conduct in the form of groping, touching, and penetrating Plaintiffs' vagina without consent, all of which constituted malicious, willful, intentional, harmful, and offensive contact that caused sever physical and mental injury described herein.

345.    As a direct and proximate cause of the foregoing, Plaintiffs suffered the injuries described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count VIII

### Supplemental State Law Claim for Civil Conspiracy Against All Defendants

346.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

347.    All individual Defendants knowingly, maliciously, recklessly, and with gross negligence conspired to engage in the aforementioned Tort Claims and stated facts, whereby each Defendant acted in concert by agreement to cause the foreseeable harm and/or facilitate the harm through individual and/or separate acts and/or omissions.

348.    As a direct and proximate cause of this conspiracy, Plaintiffs suffered the injuries described herein.

WHEREFORE, Plaintiffs demands judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Count IX

### Supplemental State Law Claim for Negligent Retention Against Defendant Policymakers upon Plaintiff Fox

349.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

350.    Defendant policymakers knew of Schnipes' rape of female inmates prior to 2011.

351.    Defendant policymakers covered up evidence of this abuse.

352.    Defendant policymakers retained Schnipes as an employee, permitting him to continue to assault Plaintiffs, when they had a duty to Plaintiffs to terminate his employment.

353.    As a direct and proximate cause of this negligent retention, Plaintiffs suffered the injuries described herein.

WHEREFORE, Plaintiffs demand judgment against Defendants for compensatory damages in excess of $150,000.00 and punitive damages in excess of $150,000.00 plus interest, costs, attorney fees, and any such other relief as this Court may deem just.

## Damages

354.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

355.    As the proximate result of the acts committed by the defendants under the Color of State Law in violation of the United States Constitution and violations of Pennsylvania State Law, the Plaintiffs suffered damages, not limited to, substantial pain, mental anguish, post traumatic stress disorder, an inordinate fear of authority figures, isolated spaces, shame, humiliation, as well as physical and psychological injury. The Plaintiffs also suffered loss of future life experience, enjoyment, economic loss, and deprivation of the Plaintiffs' Civil Rights.

356.    On all claims for relief under 42 U.S.C. § § 1983, 1985, 1986, and 1988, the Plaintiffs demand judgment against the Defendants for compensatory damages in an amount in excess of $150,000.00 and punitive damages in an amount in excess of $150,000.00, plus interest, costs, attorney fees, declaratory relief mandating compliance and/or independent review with respect to State and Federal Prison regulations, the Federal Prison Rape Prevention Act, and any such other relief as this Honorable Court may deem just.

357.    On all claims for relief under Pennsylvania Law, the Plaintiffs demand judgment against the Defendant for compensatory damages in an amount in excess of $150,000.00 and punitive damages in an amount in excess of $150,000.00, plus interest, costs, attorney fees, and any such other relief as this Honorable Court may deem just.

## Jury Demand

358.    Plaintiffs incorporate by reference all paragraphs, both preceding and following this averment, of this Complaint as if fully set forth herein.

359.    On all counts, facts, and claims asserted herein, Plaintiffs demand a trial by jury.

Respectfully Submitted:

*Walker Comerford Law*

*/s/ Matthew T. Comerford*

Matthew T. Comerford, Esq.

*/s/ Paul J. Walker*

Paul J. Walker, Esq.
Walker Comerford Law
Attorney for Plaintiff
205-207 N. Washington Avenue
Scranton, PA 18503
Phone: 570-344-2355
Fax: 570-344-1061