# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TAMMY FOX, *et al.*,

    Plaintiffs,

        v.

LACKAWANNA COUNTY, *et al.*,

    Defendants.

NO. 3:16-CV-1511

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are five (5) motions to dismiss (Docs. 50; 57; 59; 62; 65) and two motions to strike (Docs. 58; 63). The instant action involves allegations of sexual abuse of female inmates[1] by corrections officers at the Lackawanna County Prison (the "Prison") and the ensuing cover-up and concealment of same by various officials of Lackawanna County (the "County").[2] Plaintiffs claim that they were raped,

---

[1]     Plaintiffs here are Tammy Fox ("Fox"), Jamie Tompkins ("Tompkins"), Allison ("Demy"), and Joanne Perri ("Perri") (collectively, where appropriate, "Plaintiffs").

[2]     Named as Defendants are the following: the County; Commissioner Patrick O'Malley ("O'Malley"); Commissioner Jim Wansacz ("Wansacz"); Commissioner Corey O'Brien ("O'Brien"); Commissioner Michael Washo ("Washo"); Commissioner A.J. Munchak ("Munchak"); Commissioner Robert Cordaro ("Cordaro"); John/Jane Doe County Employees; Warden Robert McMillan ("McMillan"); Warden Vincent Mooney ("Mooney"); Warden Janine Donate ("Donate"); Warden Tim Betti ("Betti"); Lieutenant Nancy Carroll ("Carroll"); Deputy Warden David Langan ("Langan"); Corrections Officer Charles Beatrice ("Beatrice"); Thomas Staff ("Staff"); Brian Jeffers ("Jeffers"); Corrections Officer Joseph Black ("Black"); Corrections Officer Heather Wolff ("Wolff"); Corrections Officer William Shandley ("Shandley"); Corrections Officer Cherelli ("Cherelli"); Corrections Officer George McHale ("McHale"); Corrections Officer Catherine Novack ("Novack"); Corrections Officer Christine Neveroski ("Neveroski"); Corrections Officer Casey Calpin ("Calpin"); Corrections Officer Paula Bondy ("Bondy"); Corrections Officer Mary Beth Coar ("Coar"); Corrections Officer Sergeant Kate Fanning ("Fanning"); Corrections Officer Jean Pelucacci ("Pelucacci"); Corrections Officer Rhonda Fiederer

sexually assaulted, and harassed by corrections officers while they were incarcerated in the Prison and thereafter when they were subject to court supervision. Yet, despite knowledge of this culture and the abuse female inmates were subjected to, the County, its Commissioners, Prison wardens, supervisory officials, and other employees allegedly did nothing and, to the contrary, prevented this misconduct from coming to light. The Second Amended Complaint raises claims pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 for violations of Plaintiffs' rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs also assert a number of state law causes of action.

Lackawanna County Defendants[3] and O'Malley in his individual capacity seek to strike Plaintiffs' amended complaint and Second Amended Complaint for failure to comply with the Federal Rules of Civil Procedure. For reasons set forth below, the motions to strike will be denied.

Additionally, Defendants have moved to dismiss all claims filed by Tompkins, Demy, and Perri as barred by the applicable statute of limitations because these Plaintiffs were all last incarcerated in the Prison well over two (2) years before the filing of their claims. Further, all Defendants argue that Fox's claims regarding incidents of sexual abuse that occurred prior to June 21, 2014, the applicable date of a tolling agreement between the parties, should be dismissed as time barred. Plaintiffs Demy and Perri's claims will be dismissed with prejudice because it is clear from the

("Fiederer"); Corrections Officer Captain Robert Maguire ("Maguire"); Corrections Officer Shnipes ("Shnipes"); Corrections Officer James Walsh ("Walsh"); Corrections Officer McPhillips ("McPhillips"); Corrections Officer Leo Baum ("Baum"); Corrections Officer Mark Johnson ("Johnson"); Corrections Officer Tammy Miller ("Miller"); Corrections Officer Joseph Robert Slobodnek ("Slobodnek"); and John/Jane Doe Corrections Officers (collectively, where appropriate, "Defendants").

[3]     Lackawanna County Defendants are the County, O'Malley in his official capacity only, and Wansacz, O'Brien, Washo, Munchak, Cordaro, and Jeffers in their official and individual capacities.

face of the Second Amended Complaint that their causes of action were untimely filed and the statute of limitations was not tolled by the discovery rule, the fraudulent concealment doctrine, or federal equitable tolling principles. Conversely, Plaintiffs Fox and Tompkins' claims will not be dismissed because it is not apparent from the face of the Second Amended Complaint that their claims are barred by the statute of limitations.

## I. Background

### A. Procedural History and Motions to Strike.

Fox commenced this action on July 22, 2014. (*See* Doc. 1, *generally*). After Defendants filed a number of motions to dismiss, (*see* Docs. 17; 39; 42), Fox filed a Motion for Extension of Time to File Response to Lackawanna County Defendants' Motion to Dismiss, in which she requested an extension of time "to respond to Lackawanna County Defendants' Motion to Dismiss and/or file an Amended Complaint." (Doc. 43, 2). By Order dated November 7, 2016, Fox's motion for an extension was granted, and she was given until December 3, 2016 to file her "Response to Lackawanna Defendants' Motion to Dismiss and/or Amended Complaint . . . ." (Doc. 44).

On December 3, 2016, Fox, joined by Tompkins, Demy, and Perri, filed an amended complaint. (*See* Doc. 47, *generally*). Subsequently, Plaintiffs Fox, Tompkins, Demy, and Perri filed the Second Amended Complaint on December 8, 2016. (*See* Doc. 48, *generally*). The docket notes that Plaintiffs' December 3, 2016 filing was an "incorrect image, incorrectly filed by counsel. Properly re-filed as Doc. 48." (*See* Docket). Plaintiffs represent that the Second Amended Complaint "did no more than remove the District Attorney Defendant and add District Attorney staff to the initially filed John Doe Defendant party. No material change in the allegations of the Amended Complaint occurred in the Second Amended Complaint." (Doc. 71, 2).

O'Malley, in his individual capacity, and Lackawanna County Defendants filed standalone motions to strike the amended complaint and Second Amended Complaint.

3

(*See* Docs. 58; 63). Lackawanna County Defendants and O'Malley argue that Plaintiffs' amended pleadings should be struck for failure to comply with Rule 15 of the Federal Rules of Civil Procedure and because the amendments were substantively improper insofar as they added new claims by new parties. (*See* Docs. 69; 74). Similarly, while not filed as an independent motion, Correctional Defendants[4] assert that the claims of Tompkins, Demy, and Perri were improperly added to the complaint in violation of Federal Rule of Civil Procedure 20. (*See* Doc. 76, 17-18).

The motions to strike will be denied. Amendments to pleadings other than those made as a matter of course are governed by Rule 15(a)(2), which states that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Given the November 7, 2016 Order, the amended complaint filed on December 3, 2016 was proper. Further, because the Second Amended Complaint filed five (5) days later (and before any answers or Rule 12 motions were filed to the amended complaint) did no more than clarify the identity of the John Doe parties, the Second Amended Complaint will not be stricken.

Further, the addition of Tompkins, Demy, and Perri as Plaintiffs in this litigation did not violate Rule 20. Rule 20(a)(1) states:

> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. (20)(a)(1). Correctional Defendants argue that because Tompkins,

---

[4] Correctional Defendants are McMillan, Mooney, Donate, Betti, Wolff, Neveroski, Calpin, Bondy, Coar, Fanning, Pelucacci, Fiederer, Maguire, Walsh, McPhillips, Baum, Johnson, Miller, Slobodnek, Carroll, Lagan, Beatrice, Staff, Shandley, Cherelli, McHale, and Novak.

4

Demy, and Perri "allege different sexual assaults allegedly undertaken by different Defendants they do not satisfy the two part test established in F.R.C.P. 20(1)(A) and (B)." (Doc. 76, 18).

Joinder of these Plaintiffs pursuant to Rule 20 was permissible. Plaintiffs all allege that they suffered similar sexual assaults by multiple County employees (often by the same corrections officers) and that the abuse was permitted to continue, at least in part, due to County policies and practices of covering-up and concealing this wrongdoing. Thus, Plaintiffs assert a right to relief arising out of the same alleged occurrence or series of occurrences. *See, e.g., Roe v. City of New York*, 151 F. Supp. 2d 495, 509 (S.D.N.Y. 2001). Likewise, the existence of this practice is a central question to the claims of all Plaintiffs. *See id*. Accordingly, joinder under Rule 20 was proper. *Accord Hinson v. Norwest Fin. South Carolina, Inc.*, 239 F.3d 611, 618 (4th Cir. 2001) ("The joining plaintiffs alleged that they participated in the same kind of transaction in which the Hinsons had participated and that all the transactions involved similar loans from Norwest. The joining plaintiffs also alleged the same or similar types of violations committed by Norwest in these transactions. Finally, it appears that similar principles of law would have been applicable to both the original plaintiffs and the joined plaintiffs. While it is true that the factual circumstances of each transaction differed, we cannot say that it was an abuse of discretion for the district court to have permitted the joinder.").

## B.     Factual Allegations.

### 1.     Plaintiff Fox.

Fox was incarcerated at the Prison on multiple occasions since April 4, 2007. (*See* Doc. 48, ¶¶ 50, 56, 75). Most recently, Fox was incarcerated at the Prison from June 7, 2015 through August 14, 2015. (*See id*. at ¶ 75). During her periods of incarceration, she was verbally harassed by, *inter alia*, Baum and Walsh, (*see id*. at ¶¶ 51-54), and sexually assaulted by Shnipes, Black, Johnson, and McMillan. (*See id*. at ¶¶ 57, 64-66, 69, 76-82, 88-90). Fox was also subject to assaults and harassment

while she was on work release, house arrest, and/or probationary supervision. (*See id.* at ¶¶ 83-84, 94). Fox had mental health diagnoses prior to her incarceration at the Prison, but as a result of her treatment therein, her mental health issues have been exacerbated and she suffers from post-traumatic stress disorder. (*See id.* at ¶¶ 270-271).

### 2. Plaintiff Tompkins.

Tompkins was incarcerated at the Prison numerous times from November 10, 1998 until she was most recently released on November 15, 2013. (*See id.* at ¶ 96). While incarcerated, she was sexually harassed by multiple corrections officers, including Defendants Shandley, Baum, Cherelli, and Shnipes. (*See id.* at ¶ 101-103). Tompkins was sexually assaulted both while in the Prison and during periods of release by Shandley. (*See id.* at ¶¶ 109-111). She was also sexually assaulted repeatedly during her incarceration by Shnipes, Walsh, and Maguire. (*See id.* at ¶¶ 115-119, 125-128). Tompkins wrote letters to Prison supervisors, attempted to file grievances, and she personally informed Prison staff of the ongoing sexual abuse. (*See id.* at ¶¶ 112-113, 120). These letters, complaints, and grievances were destroyed and ignored. (*See id.* at ¶¶ 120-122). When Tompkins was released from the Prison in 2013 up until 2016, she was subject to court supervision. (*See id.* at ¶¶ 130-131). During this time, Maguire threatened to have her violated on probation and/or parole if she refused to have sex with him or reported his behavior. (*See id.* at ¶ 131). To this day, Tompkins remains on probation/parole. (*See id.* at ¶ 280).

### 3. Plaintiff Demy.

Demy was incarcerated in the Prison frequently between April 5, 2002 and December 19, 2012. (*See id.* at ¶ 137). Beginning in 2006, Black would rape Demy nearly daily while she was incarcerated, and Black would stalk her when she was released from the Prison. (*See id.* at ¶¶ 139-145, 172). Black pled guilty to his conduct. (*See id.* at ¶ 146). She was also physically and sexually assaulted on one occasion by Baum, Hart, and Novack. (*See id.* at ¶ 147-150, 180-183). Calpin and

female corrections officers at the Prison were aware of Black's behavior, but they refused to help. (*See id*. at ¶¶ 152-154, 173).

Demy has been diagnosed with mild mental retardation, has severe learning disabilities, has granted her daughter a Power of Attorney, and has a full-time in home caregiver. (*See id*. at ¶¶ 286-288). As a result of her treatment in the Prison, Demy was additionally diagnosed with depression. (*See id*. at ¶ 289).

A Grand Jury was convened against Black in 2011 based on the sexual assaults of Demy at the Prison. (*See id*. at ¶ 290). During the course of Black's prosecution, Lackawanna County District Attorney William Fisher ("Fisher") met with Demy on multiple occasions. (*See id*. at ¶ 293). Fisher, as well as County Detectives, told Demy to delay filing a civil suit until the conclusion of the prosecution. (*See id*. at ¶¶ 294-296). Defendant Maguire also continually approached Demy during Black's prosecution, threatening her with retaliation if she "snitched" on him or any other corrections officers. (*See id*. at ¶ 299-302).

### 4. Plaintiff Perri.

Perri was incarcerated in the Prison eight (8) times between March 20, 1998 and October 27, 2011. (*See id*. at ¶ 157). During these periods, Perri was sexually assaulted by Shnipes, McHale, and Maguire. (*See id*. at ¶¶ 158-159, 162). Perri was also verbally harassed by corrections officers, (*see id*. at ¶ 160), and Walsh and Slobodnek forced her to show them her private parts. (*See id*. at ¶ 161). Perri filed multiple grievances, but they were either destroyed or ignored. (*See id*. at ¶ 164).

In 2009, Perri was referred to an attorney in Philadelphia. (*See id*. at ¶ 309). That attorney instructed Plaintiff not to file suit while she was incarcerated and to wait until she was released. (*See id*. at ¶ 310). In 2016, Plaintiff was diagnosed with mental health issues stemming from her incarceration at the Prison. (*See id*. at ¶ 312).

### 5. Prior Tortious Conduct and Policy Conduct.

In or about 2011, a Grand Jury was convened to investigate Shnipes. (*See id*. at ¶¶ 57, 72). This was known to the County, the District Attorney, and various Prison

officials. (*See id*.). The Prison did no investigation of Shnipes, and he was permitted to continue working. (*See id*. at ¶ 60). Shnipes was ultimately forced to resign in 2013 for having sexual relations with female inmates. (*See id*. at ¶ 73). Other corrections officers were aware of the sexual assaults of female inmates and the culture of cover-up among officers. (*See id*. at ¶¶ 184-199). During this time, Prison officials had off the record meetings to discuss prison matters and policy, including discussion of the sexual assaults and harassment of inmates. (*See id*. at ¶ 224-226).

In 2011, Maguire was tasked with investigating sexual assaults in the Prison. (*See id*. at ¶ 246). Maguire destroyed evidence corroborating an allegation of rape. (*See id*. at ¶¶ 2476-247). The same year, Tompkins provided Maguire with information and supporting documentation demonstrating that Shnipes and other corrections officers were raping female inmates. (*See id*. at ¶¶ 249-250). Rather than provide this information to the proper authorities, Prison and County officials forced Shnipes to resign and then concealed his wrongdoing. (*See id*. at ¶ 253).

Based on the foregoing, Plaintiffs allege claims for violations of their First, Fourth, Eighth, and Fourteenth Amendment rights pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 1988.[5] Plaintiffs also bring a number of state law causes of action. Defendants now seek dismissal of a number of claims on timeliness grounds and to have impertinent and scandalous averments struck from the Second Amended Complaint. The motions have been fully briefed and are ripe for disposition.

## II. Legal Standards

**A.** **Rule (12)(b)(6) Motion to Dismiss.**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a

---

[5]     Section 1988 "is not itself a cause of action; rather, it is 'intended to complement the various acts which do create federal causes of action for the violation of federal rights' by setting regulations as to choice of laws, attorneys fees, and experts fees in a federal civil rights suit." *Rittenhouse Entm't, Inc. v. City of Wilkes-Barre*, 861 F. Supp. 2d 470, 491 (M.D. Pa. 2012) (quoting *Moor v. Alameda Cnty.*, 411 U.S. 693, 702, 93 S. Ct. 1785, 36 L. Ed. 2d 596 (1973)).

complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

**B.      Rule 12(f) Motion to Strike.**

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Simmons v. Simpson House, Inc.*, 224 F. Supp. 3d 406, 421 (E.D. Pa. 2016) (quotation and citation omitted). "Relief under Rule 12(f) is generally disfavored and will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse

the issues in the case." *Id.* (quotation and citation omitted). "Motions to strike are decided on the pleadings alone." *Keller v. Lackawanna Cnty.*, No. 15-2511, 2017 WL 3268154, at *2 (M.D. Pa. Aug. 1, 2017) (quotation and citation omitted).

## III. Discussion

In the motions to dismiss, Defendants all argue that: (1) Fox's claims that predate June 21, 2014 are untimely; and (2) the claims raised by Defendants Tompkins, Demy, and Perri are barred by the statute of limitations because those Plaintiffs were released from the Prison over two (2) years before the filing of their claims on December 3, 2016. Correctional Defendants also contend that the Second Amended Complaint should be dismissed for failure to comply with Federal Rule of Civil Procedure 8(a). Additionally, Lackawanna County Defendants seek dismissal of Plaintiffs' demand for punitive damages.[6] Finally, various averments in the Second Amended Complaint are challenged as impertinent and scandalous under Rule 12(f).[7] These contentions are addressed below.

**A.     Timeliness.**

Plaintiffs' federal law causes of action are brought pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Whereas the statute of limitations on Plaintiffs' §§ 1983 and 1985 claims in Pennsylvania is two (2) years, *see Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017); *Thornton v. Hens-Greco*, 629 F. App'x 251, 254 (3d Cir. 2015), the text of § 1986 provides for a one (1) year limitations period. *See*, *e.g.*, *Bullard v. Bureau of Unemployment and Allowances*, 516 F. App'x 111, 112 n.3 (3d Cir. 2013); *Cito v. Bridgewater Twp. Police Dept.*, 892 F.2d 23, 25 (3d Cir.1989).

---

[6]     Because Plaintiffs do not contest the dismissal of Counts VIII and IX against Lackawanna County Defendants, (*see* Doc. 71, 3 n.1), those claims will be dismissed as to Lackawanna County Defendants.

[7]     O'Malley in his individual capacity contends that the Second Amended Complaint should be dismissed for lack of specificity. (*See* Doc. 61, 14-15; Doc. 72, 13-14). Finding this argument without merit, it will be denied without further elaboration.

Under the Federal Rules of Civil Procedure, affirmative defenses, such as a statute of limitations defense, should generally be raised by way of answer to the complaint. *See* Fed. R. Civ. P. 8(c); *see also Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002) ("a limitations defense must be raised in the answer, since Rule 12(b) does not permit it to be raised by motion"). But, the law of this Circuit, under the so-called "Third Circuit Rule," "permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only 'if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Id*. (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)). Restated, "[a] complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint." *Wisniewski*, 857 F.3d at 157 (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). "A § 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which his action is based." *Id*. at 157-58 (alterations omitted) (quoting *Sameric Corp. of Del. v. City of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998)); *accord Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989) (§ 1985(3) cause of action accrues when the plaintiff "knew or should have known of the alleged civil rights violation").[8] With these principles in mind, and for

---

[8]     Although not developed by Plaintiffs in detail, they suggest that their *Monell* claims did not accrue until they had "a legitimate claim against Lackawanna County and its officials." (Doc. 71, 28; *see id*. at 32 ("Plaintiffs could not have known that they had a federal cause of action under § 1983 for *Monell* liability or against policymakers and supervisors for deliberate indifference.")). Although the Third Circuit does not yet appear to have addressed in a precedential opinion whether a *Monell* claim can proceed on a "delayed accrual" theory, it has commented in a non-precedential decision that "[t]here is no basis in our precedent for applying such a 'delayed accrual' theory." *Tengood v. City of Phila.*, 529 F. App'x 204, 210 & n.5 (3d Cir. 2014) (but declining to address merits of the argument because it was not raised in the district court); *see also King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 763 (5th Cir. 2015) (declining to adopt a "delayed accrual" rule); *Leonard v. City of Pittsburgh*, No. 13-455, 2013 WL 4541727, at *7 & n.11 (W.D. Pa. Aug. 27, 2013) ("a plaintiff who is immediately

the reasons discussed in more detail below, Plaintiffs Fox and Tompkins will be permitted to proceed with their claims, but Demy and Perri will not.

### 1. Plaintiffs Fox and Tompkins.

In the Second Amended Complaint, Fox avers that she was last incarcerated at the Prison between June 7, 2015 through August 14, 2015. (*See* Doc. 48, ¶ 75). During this period, she alleges that she was verbally harassed and sexually assaulted by, *inter alia*, Johnson, Baum, and McPhillips. (*See id*. at ¶¶ 77-80, 87-91). As these allegations occurred within two years of June 21, 2016, Fox's § 1983 claims as to these instances of abuse are undisputedly timely. Moreover, Fox's claims pertaining to abuse that predates June 21, 2014 will not be dismissed. As stated, dismissal on statute of limitations grounds pursuant to Rule 12(b)(6) is proper only when the bar is apparent on the face of the complaint. *See Wisniewski*, 857 F.3d at 157. Because Fox pleads facts which may support the invocation of the continuing violations doctrine to toll the statute of limitations in this case, *see Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001), Fox's allegations of abuse occurring before June 21, 2014 cannot be dismissed on the instant 12(b)(6) motions.

Tompkins will also be permitted to proceed with her claims for the alleged violations of her constitutional rights. According to the allegations in the Second Amended Complaint, Tompkins was last incarcerated at the Prison in November 2013. (*See* Doc. 48, ¶ 96). However, Tomkins further alleges that since her release from confinement and up until 2016, she has been on court supervision and subjected to

---

aware that she is a victim of the wrongful acts of a municipal officer may not delay the accrual of a claim against the municipality until she also discovers that she might have a viable *Monell* claim."); *but see Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) ("a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county policy or custom."); *Wilson v. Hays*, 228 F. Supp. 3d 1100, 1112 (S.D. Cal. 2017) ("the Court concludes it is possible for Plaintiff to proceed on a theory of delayed accrual of her *Monell* claim.").

repeated instances of sexual abuse. (*See id.* at ¶¶ 130-135, 280). Because such facts may trigger application of the continuing violations doctrine, Tompkins claims will not be dismissed on timeliness grounds at this time. *See, e.g., Bosold v. Warden, SCI-Somerset*, No. 11-4292, 2013 WL 315714, at *4 (E.D. Pa. Jan. 28, 2013).[9]

## 2. Plaintiffs Demy and Perri.

Similar to Tompkins, Demy and Perri were last incarcerated at the Prison over two years before the filing of their claims on December 3, 2016. (*See* Doc. 48, ¶¶ 137, 157). But, unlike Tompkins, Demy and Perri do not allege to have been subject to sexual abuse during the limitations period since their release. (*See id.*, *generally*). Thus, while Demy and Perri do not dispute that the alleged instances of sexual abuse occurred more than two (2) years before the filing of their claims, they argue that their causes of action should nevertheless be considered timely based on the discovery rule, the fraudulent concealment doctrine, and federal equitable tolling principles. (*See* Doc. 71, 14-37).[10]

First, the discovery rule is inapplicable based on the facts as alleged in the Second Amended Complaint. The discovery rule tolls the statute of limitations when an injury or its cause was not known or reasonably knowable "'despite the exercise of due diligence.'" *Mest v. Cabot Corp.*, 449 F.3d 502, 510 (3d Cir. 2006) (quoting *Pocono Int'l Raceway v. Pocono Produce, Inc.*, 468 A.2d 468, 471 (Pa. 1983)). Under the discovery rule, "even if a plaintiff suffers an injury, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" *Id.*

---

[9]      Fox and Tompkins also argue that the discovery rule, fraudulent concealment doctrine, and federal equitable tolling principles apply to their claims. (*See* Doc. 71, 27-38). I need not address these arguments with respect to these Plaintiffs at this time since they plead sufficient facts to withstand the motions to dismiss on a continuing violations theory.

[10]      Unlike Fox and Tompkins, Demy and Perri do not invoke the continuing violations doctrine. (*See* Doc. 71, 14-27).

(quoting *Debiec v. Cabot Corp.*, 352 F.3d 117, 129 (3d Cir. 2003)). Restated, the limitations period commences upon the plaintiff's "actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." *Gleason v. Borough of Moosic*, 15 A.3d 479, 484 (Pa. 2011). Thus, "the discovery rule focuses not on 'the plaintiff's actual knowledge, but rather on 'whether the knowledge was known, or through the exercise of diligence, knowable to' the plaintiff." *Mest*, 449 F.3d at 511 (quoting *Bohus v. Beloff*, 950 F.2d 919, 925 (3d Cir. 1991)). While a court may entertain a motion to dismiss on statute of limitations grounds, "it may not allocate the burden of invoking the discovery rule in a way that is inconsistent with the rule that a plaintiff is not required to plead, in a complaint, facts sufficient to overcome an affirmative defense." *Schmidt*, 770 F.3d at 251.

In the matter *sub judice*, the discovery rule did not toll the running of the statute of limitations on Plaintiffs Demy and Perri's federal law causes of action. More particularly, Demy and Perri were aware of their injuries at the time they were sexually assaulted and harassed. Further, that a cover-up is alleged to have been a secondary cause of the assaults does not alter the fact that Demy and Perri claim injuries of sexual abuse. *See Leonard v. City of Pittsburgh*, 570 F. App'x 241, 245 (3d Cir. 2014) ("The injuries Leonard alleges involving the City are secondary to the true injury - the actions taken by Skweres. Leonard knew of her injury by Skweres, and - importantly - she knew that he was a police officer employed by the City in June 2008. Exercising reasonable diligence, she could have discovered at that time a potential *Monell* claim against the City. Thus, she is not entitled to a tolling of the limitations period under the discovery rule."); *accord Getchey v. Cnty. of Northumberland*, 120 F. App'x 895, 899 (3d Cir. 2005) (discovery rule not applicable where the plaintiff could and did discover his injuries related to sexual assaults while in prison during the limitations period). Further, the statute of limitations was not tolled on the basis of any alleged

14

repressed memories. *See Dalrymple v. Brown*, 701 A.2d 164, 167, 171 (Pa. 1997). The discovery rule does not afford Demy and Perri relief from the statute of limitations.

Second, the doctrine of fraudulent concealment did not toll the statute of limitations on Plaintiffs Demy and Perri's claims. "Pennsylvania's fraudulent concealment doctrine tolls the statute of limitations where 'through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry.'" *Mest*, 449 F.3d at 516 (quoting *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 556 (3d Cir. 1985)). "[T]he fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission." *Id.* (citing *Bohus*, 950 F.2d at 925-26). "'In order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiff justifiably relied.'" *Leonard*, 570 F. App'x at 245 (alterations omitted) (quoting *Lazarski v. Archdiocese of Phila.*, 926 A.2d 459, 465 (Pa. Super. Ct. 2007)).

The fraudulent concealment doctrine does not apply to Demy and Perri's claims. For reasons explained previously, Demy and Perri knew of their injuries and claims at the time of the alleged instances of sexual abuse. And, while Plaintiffs aver that the County and its officials purportedly covered-up the criminal investigations of corrections officers and conspired to keep the systematic abuse of female inmates from coming to light, (*see* Doc. 48, *generally*), Demy and Perri fail to allege any actions to support invocation of the fraudulent concealment doctrine. Demy and Perri do not allege any affirmative acts by Defendants that would have misled them into believing the sexual abuse did not occur, that the abuse had not been committed by specific corrections officers, and/or that they suffered injuries as a result. Claims of concealment like those raised here have been found insufficient to invoke the fraudulent concealment doctrine. *See Meehan v. Archdiocese of Phila.*, 870 A.2d 912,

922-23 (Pa. Super. Ct. 2005).  For example, in finding the fraudulent concealment doctrine inapplicable in *Meehan*, the Pennsylvania Superior Court explained:

> The plaintiffs do not allege that the defendants' silence misled them into believing that the alleged sexual abuse did not occur, that it had not been committed by the priests or nun, or that it had not resulted in injury to appellants.  The defendants never concealed from any of the plaintiffs the fact of the injury itself.  Nor do the plaintiffs allege that they were lied to by the Archdiocese with regard to the identity of their abusers or their abusers' place within the Archdiocese, which if relied upon, would have caused them to suspend pursuit of their claims.
>
> Again, the essence of the plaintiffs' fraudulent concealment argument is that the defendants' general conduct and/or silence concealed from them an additional theory of liability for the alleged sexual abuse. As noted in the federal case, *Kelly v. Marcantonio*, "this argument misses the mark . . . for a cause of action to accrue, the entire theory of the case need not be immediately apparent . . . as soon as [the plaintiffs] became aware of the alleged abuse, they should also have been aware that the [defendants], as the priests' employers, were potentially liable for that abuse." *Kelly v. Marcantonio*, 187 F.3d 192, 201 (1st Cir. 1999).
>
> Had the plaintiffs (sometime after the abuse but before the running of the statute of limitations) questioned the Archdiocese about their abusers (for example, questions about their abusers' current location or history within the church), and had the Archdiocese affirmatively and independently acted in response to the plaintiffs' inquiries so as to mislead the plaintiffs into forgoing their suits, the fraudulent concealment exception would later allow the plaintiffs' suits.  The general and systematic conduct alleged by the plaintiffs here, however, does not constitute an affirmative act for purposes of the fraudulent concealment exception and the plaintiffs have not shown that they relied on any affirmative act of concealment by the defendants which caused them to forgo pursuit of their causes of action. We agree that to postpone the accrual of causes of action until [the plaintiffs] completed their investigation of all potential liability theories would destroy the effectiveness of the limitations period.  Therefore the fraudulent concealment exception is inapplicable and does not toll the statute of limitations in this matter.

*Id.*; *Delaney v. Archdiocese of Phila.*, 924 A.2d 659, 663 (Pa. Super. Ct. 2007); *see also Leonard*, 2013 WL 4541727, at *8, *aff'd*, 570 F. App'x at 245-46.  Because Plaintiffs Demy and Perri have not alleged a concealment of their rights or their corresponding interests, *see id.*, the fraudulent concealment doctrine did not toll the

statute of limitations on their claims.

Lastly, Demy and Perri seek to invoke federal equitable tolling principles. "Where state tolling principles contradict federal law or policy, federal tolling principles may apply in certain limited circumstances." *Kach v. Hose*, 589 F.3d 626, 639 (3d Cir. 2009). Although the Third Circuit in *Kach* expressed doubt that Pennsylvania law conflicts in any way with § 1983 or its underlying policies, it nevertheless identified three federal equitable tolling principles: "(1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum." *Id*. (quoting *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000)).

The third equitable tolling principle does not apply on the facts alleged in the Second Amended Complaint. Similarly, the first principle does not appear different from Pennsylvania's fraudulent concealment doctrine, which, for reasons discussed previously, is inapplicable here. *See Leonard*, 2013 WL 4541727, at *9, *aff'd*, 570 F. App'x at 245-46; *see also Getchey*, 120 F. App'x at 899 (first scenario for equitable tolling was not applicable where prison warden, although being unresponsive to allegations of sexual assault, did not mislead the plaintiff with respect to the availability of a cause of action).

Thus, applicability of federal equitable tolling here depends on whether Demy and Perri were prevented from asserting their claims as a result of "extraordinary circumstances." They were not. First, although Demy and Perri allege that they were threatened and actually retaliated against, Demy was last incarcerated at the Prison in December 2012, while Perri was last incarcerated there in October 2011. Thus, assuming without deciding that a reasonable fear of retaliation in the prison context may, on occasion, constitute "extraordinary circumstances" to justify equitable tolling, *see*, *e.g.*, *Davis v. Jackson*, No. 15-5359, 2016 WL 5720811, at *11 (S.D.N.Y. Sept.

30, 2016) ("inmates may show extraordinary circumstances for purposes of equitable tolling where they allege specific facts showing that a reasonable fear of retaliation prevented them from filing a timely complaint" but still requiring the plaintiff to act with "reasonable diligence"), such a rule is not applicable here where Demy and Perri were both released from prison years before their respective claims were filed. *Accord Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) ("Running throughout the equitable estoppel cases is the obligation of the plaintiff to exercise due diligence to preserve his or her claim."). In addition, the Third Circuit has made clear that equitable tolling is available in very few situations and is to be extended only sparingly, and the allegations presented here do not present such circumstances. *See, e.g., Frasier-Kane v. City of Phila.*, 517 F. App'x 104, 107 (3d Cir. 2013) (assault by police officer and fear of retaliation insufficient to warrant equitable tolling); *Kach*, 589 F.3d at 644-45 ("It is unclear what, if any, mental disability Kach is alleged to suffer from, and even if we found that Kach was suffering from a disability, there is no evidence whatever that the alleged constitutional deprivations of which she complains were motivated, in even a minor way, by such a disability."); *Zied v. Barnhart*, 418 F. App'x 109, 115 (3d Cir. 2011) ("mental incompetence is not *per se* a reason to toll a statute of limitation in a federal action."); *Hedges v. United States*, 404 F.3d 744, 752 (3d Cir. 2005) (finding the plaintiff's *pro se* status, coupled with his severe depression, insufficient to merit equitable tolling as an extraordinary situation preventing him from asserting his rights); *cf. Lake*, 232 F.3d at 370 (equitable tolling might be appropriate where "a guardian conspires to deprive a mentally incompetent person of her constitutional and civil rights" and noting that "[w]here we have permitted equitable tolling for mental disability in the past, the plaintiff's mental incompetence motivated, to some degree, the injury that he sought to remedy.").

Perri also argues that her claims should be equitably tolled because she was informed by an attorney in Philadelphia in 2009 that she should wait until after she was released from the Prison to commence a civil action. (*See* Doc. 48, ¶¶ 309-311).

Such advice is not a sufficient "extraordinary circumstance" for equitable tolling purposes. *See Rockmore v. Harrisburg Prop. Serv.*, 501 F. App'x 161, 164 (3d Cir. 2012) ("Attorneys' mistakes are generally attributable to their clients, and mere negligence by an attorney is not generally found 'to rise to the 'extraordinary' circumstances required for equitable tolling.'"); *Cromartie v. Alabama State Univ.*, 693 F. App'x 852, 853 (11th Cir. 2017) ("Cromartie argues that her delay is attributable to the 'legal malpractice' of 'her legal services provider,' but attorney "negligence, even gross negligence," does not qualify as an extraordinary circumstance for purposes of equitable tolling."); *accord Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 592 (3d Cir. 2005) (finding that "any errant advice Appellant may have received from an EEOC employee did not rise to the level of an 'extraordinary' circumstance justifying tolling of the limitations period"). Further, insofar as Demy relied on this advice, she still waited to commence this action until five (5) years after she was last incarcerated at the Prison. Equitable tolling is not warranted under the circumstances.

Finally, although Plaintiff Demy alleges that she was requested by Fisher not to file a civil suit during the pendency of Black's prosecution, (*see* Doc. 48, ¶¶ 293-298), she does not allege that he misled her about a cause of action. Moreover, even if Fisher's advice is treated as being the advice by Demy's own counsel, " Plaintiff's reliance on [his] advice does not present grounds for equitable tolling. Attorney error is not a basis for equitable tolling in the Third Circuit because it does not rise to the level of the extraordinary circumstances which must be present for equitable tolling to apply." *Pena-Ruiz v. Solorzano*, No. 07-2488, 2008 WL 228217, at *3 (D.N.J. Jan. 25, 2008) (citation and quotation omitted) ("the Court finds Plaintiff's allegations that he was prevented from filing his Complaint by the advice received from Defendant's prosecutors unavailing. The Court finds no basis for equitable tolling.").

Given the foregoing, Plaintiffs Demy and Perri's claims will be dismissed. Further, while they have not requested leave to file a further amended complaint, Third

Circuit "precedent supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Amendment is futile "if the amended complaint would not survive a motion to dismiss." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).

Here, it would be futile to grant Demy and Perri leave to file a third amended complaint. Demy and Perri specifically pled in the Second Amended Copmlaint "allegations regarding the statute of limitations." (Doc. 48, ¶¶ 283-312). Given the facts as presented in the Second Amended Complaint, any proposed amendment would be futile because the claims would be barred by the statute of limitations. *Cruz v. SCI-SMR Dietary Servs.*, 566 F. App'x 158, 161 (3d Cir. 2014); *Garvin v. City of Philadelphia*, 354 F.3d 215, 222 (3d Cir.2003) ("[A]ny amendment of [the] complaint would have been futile because the amended complaint could not have withstood a motion to dismiss on the basis of the statute of limitations.").

## B.    Rule 8(a).

Correctional Defendants also seek dismissal of the Second Amended Complaint for failure to comply with Federal Rule of Civil Procedure 8(a)(2). (*See* Doc. 65, ¶¶ 20-29; Doc. 76, 10-12). Correctional Defendants argue that the Second Amended Complaint fails to set forth a short and plain statement showing that Plaintiffs are entitled to relief. Essentially, Correctional Defendants take the position that the forty-eight (48) page, 358 paragraph Second Amended Complaint is too lengthy. Correctional Defendants' motion to dismiss pursuant to Rule 8(a) will be denied.

Rule 8(a) states, in pertinent part, that "[a] pleading that states a claim for relief must contain: . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "The district courts have discretion under Rule 8 to dismiss a Complaint that is 'unnecessarily complicated and verbose.'"

*Intermetro Indus.Corp. v. Enovate Med., LLC*, No. 13-2854, 2016 WL 521535, at *6 (M.D. Pa. Feb. 5, 2016) (quoting *In re Westinghouse Securities Litigation*, 90 F.3d 696, 703 (3d Cir. 1998) (Alito, J.)).  However, multiple Courts of Appeals have expressed "the view that verbosity or length is not by itself a basis for dismissing a complaint based on Rule 8(a)."  *Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1131-32 (9th Cir. 2008) (citing *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004); *Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003); *Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007)); *see also Washington v. Grace*, 353 F. App'x 678, 680 (3d Cir. 2009) ("Although Washington's amended complaint is lengthy, at nearly 80 pages, and lacks clarity in some places, we do not agree that it violated the basic pleading requirements under Rule 8."); *accord Sewraz v. Long*, 407 F. App'x 718, 718-19 (4th Cir. 2011) (district court abused its discretion in dismissing thirty-three (33) page, 265 paragraph complaint and noting that "[g]enerally, complaints dismissed under Rule 8(a) are substantially longer and more complex." (collecting cases and citing, *inter alia*, *Westinghouse Sec.*, 90 F.3d at 703-06 (600 paragraphs, 240 pages))).  Here, although lengthy, the Second Amended Complaint is not "replete with redundancy and largely irrelevant," *Hearns*, 530 F.3d at 1132, nor is it the type of "rambling, unclear or complicated" submission that courts have found violative of Rule 8.  *Intermetro Indus.*, 2016 WL 521535, at *6.  The Second Amended Complaint will not be dismissed on account of Rule 8(a).

## C.    Punitive Damages.

Lackawanna County Defendants also seek dismissal of Plaintiffs' claims for punitive damages.  (*See* Doc. 57, ¶¶ 41-45).  Because punitive damages are not available against a municipality or public employees sued in their official capacities, *see Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 266-267, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981) ("a municipality is immune from punitive damages under 42 U.S.C. § 1983");  *Gregory v. Chehi*, 843 F.2d 111, 119-20 (3d Cir. 1988) ("Punitive damages cannot be recovered from defendants in their official capacities"), the claims for

punitive damages against the County and O'Malley, Wansacz, O'Brien, Washo, Munchak, Cordaro, and Jeffers in their official capacities will be dismissed. However, the punitive damages claims against O'Malley, Wansacz, O'Brien, Washo, Munchak, Cordaro, and Jeffers in their individual capacities will not be dismissed because punitive damages may be recovered against a state actor sued in his individual capacity under § 1983 "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Highhouse v. Wayne Highlands Sch. Dist.*, 205 F. Supp. 3d 639, 651 (M.D. Pa. 2016) (quoting *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983)). Finding the Second Amended Complaint adequately details that the County and its management were aware of repeated instances of sexual assault, harassment, and rape of female inmates at the Prison but nevertheless ignored, concealed, and/or covered-up this abuse, Plaintiffs sufficiently state, at a minimum, reckless or callous indifference to their constitutional rights.

**D.      Immaterial, Impertinent, and Scandalous Matter.**

Lastly, Defendants seek to have immaterial, impertinent, and/or scandalous matter struck from the Second Amended Complaint pursuant to Rule 12(f). (*See* Doc. 50, ¶¶ 10-23 (moving to strike ¶¶ 235-237 of the amended complaint); 57, ¶¶ 47-52 (seeking to strike ¶¶ 208-216 of the Second Amended Complaint); Doc. 62, ¶¶ 10-23 (moving to strike ¶¶ 235-237 of the Second Amended Complaint); Doc. 65, ¶¶ 13-19). Defendants raise various reasons for striking these paragraphs, including that certain averments are "false", (Doc. 72, 8), or that the allegations concern "events and individuals that do not  pertain to this lawsuit [and] are not parties to this action," (Doc. 70, 14).

The paragraphs identified by Defendants will not be stricken from the Second Amended Complaint. As set forth previously, Rule 12(f) relief will be denied unless the allegations have no possible relation to the matter at hand. *See Simmons*, 224 F. Supp. 3d at 421. Here, prior events of sexual abuse and rape of female inmates by

corrections officers are relevant to numerous issues in this litigation, including, *inter alia*, the County and its policy-makers' knowledge of Prison conditions and their alleged indifference to the violations of Plaintiffs' constitutional rights. Likewise, the claimed "falsity" of an averment is not a basis to strike an allegation under Rule 12(f). *See Boyd v. United States*, 861 F.2d 106, 109 (5th Cir. 1988) (holding that falsity of a pleading does not provide a sufficient basis for granting a motion to strike under Rule 12(f)). Rule 12(f) relief is not warranted.

## IV. Conclusion

For the above stated reasons, the claims asserted by Plaintiffs Allison Demy and Joanne Perri will be dismissed with prejudice. Additionally, the claims asserted in Counts VIII and IX of the Second Amended Complaint against County Defendants will be dismissed with prejudice. The motions to dismiss will be denied in all other respects. The motions to strike will also be denied. Defendants will be directed to answer the Second Amended Complaint within twenty-one (21) days from the date of entry of the accompanying Order.

An appropriate order follows.


November 2, 2017                                      /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                               United States District Judge